Margaret Carroll **BOLLARD**, Plaintiff,

v.

**VOLKSWAGEN OF AMERICA, INC.,** et al., Defendants.

Civ. A. No. 17845-3.

United States District Court,
W. D. Missouri, W. D.

Feb. 19, 1971.

See also D.C., 313 F.Supp. 126.

Robert M. Van Horn, Hutson, Van Horn & Schmidt, Kansas City, Mo., for plaintiff.

John C. Risjord, Gordon, Adams, Niewald & Risjord, Kansas City, Mo., for defendants.

AMENDED FINDING THAT PLAINTIFF IS ENTITLED TO DEFAULT JUDGMENT FOR PLAINTIFF AND AGAINST DEFENDANT VOLKSWAGEN OF AMERICA, INC., ON THE ISSUE OF LIABILITY, AND DEFAULT JUDGMENT FOR PLAINTIFF AND AGAINST DEFENDANT

VOLKSWAGEN OF AMERICA, INC.

WILLIAM H. BECKER, Chief Judge.

This is a suit brought against the manufacturer and the distributor of an allegedly defective Volkswagen automobile which alleged defects caused, in 1969, severe injuries to plaintiff while riding as a passenger in the Volkswagen driven by her husband. Plaintiff alleged that the Volkswagen collided with a parked car causing her head to go through the windshield of the Volkswagen and then to be "violently withdrawn" from it.

The time for completion of discovery in this case was originally fixed for March 5, 1970, without objection by either party, and was extended to June 5, 1970, on motion of both parties by the order entered herein on March 5, 1970, and to June 30, 1970, on motion of both parties, by order entered herein on June 15, 1970. The case was set for trial for the week of October 5, 1970, on a special accelerated joint civil trial docket conducted by three judges.

On May 13, 1970, plaintiff filed interrogatories numbered 1 to 61, inclusive, to the defendant Volkswagen of America, Inc. ("VWoA" hereinafter) which she had served on defendant VWoA on May 12, 1970. At some date before June 4, 1970, not reflected by a certificate of service, defendant VWoA served, but did not file, purported answers to plaintiff's interrogatories 1 to 61, inclusive, except for interrogatory 13 (marked "Deleted pursuant to Court order"),[1] including answers to interrogatories 27, 35, 36, 37, 38, 41, 42, 45(b), 45(c), 47, 48, 54, 55, 56, 57 and 60. In respect to most of these interrogatories, VWoA disclaimed knowledge of the requested information. One example of this type of answer is the answer to interrogatory 42 which reads "Not within the knowledge of VWoA." Another type is the answer to

1. By an "amendment" filed May 19, 1970, interrogatory 13 was deleted by plaintiff, not by an order of the Court.

interrogatory 55 which reads "Not known to VWoA." A third type is the answer to interrogatory 48 which reads "Information not presently available to VWoA." Another type is the answer to interrogatory 54 which was "Not to the knowledge of VWoA." The answer to interrogatory 60 was "This interrogatory is unintelligible and therefore cannot be answered." The deliberate, intentional, persistent failure to file the original copies of answers of VWoA is consistent only with a tactic defiance of the Federal Rules of Civil Procedure for some self-serving purpose.

■■■■ On June 4, 1970, plaintiff filed a motion to compel further answers to interrogatories numbered 4, 33(c), 33(e), 35, 36, 37, 38, 41, 42, 44, 45(b), 45(c), 45(d), 46(c), 47, 48, 52(a) through (g), 54, 55, 56, 57 and 60. At that time the file showed that defendant VWoA had objected to the interrogatories 15 to 23, inclusive, which had been served on May 12, 1970; that objections were sustained to interrogatories 15 to 23, except for interrogatory No. 17 by an order entered June 4, 1970; and that defendant VWoA was, by the same order, directed to answer interrogatory 17 and the other interrogatories within 7 days, in the absence of any answers in the Court file. (It was not until June 19, 1970, that counsel for VWoA sent to the undersigned an unverified, unsigned photocopy of the purported answers and responses to the interrogatories served before June 4, 1970, without a certificate of service. No verified, signed copy of these purported answers and responses was filed with the clerk as required by Rules 5(d) and 33, F.R.Civ.P.) Therefore, as of June 17, 1970, in violation of Rule 33, F.R.Civ.P., and the order of June 4, 1970, the interrogatory answers had not yet been filed by defendant VWoA. Accordingly, it was necessary for the Court to issue an order on June 17, 1970, requiring the defendant to file the answers within 5 days "so that the Court may rule on plaintiff's motion." That order of June 17, 1970, was also violated, however, and the purported answers and responses of defendant VWoA were not filed until July 2, 1970. The purported answers and responses filed July 2, 1970, were in many instances different from those served on defendant earlier and were not accompanied by a certificate of service. Knowing from the order of June 17, 1970, that the Court ordered the defendant VWoA to file the answers previously served on the plaintiff and the subject of the motion to compel further answers, the defendant deliberately filed a substantially different and contradictory set of answers without leave of Court, and without advising the Court that these were a second set of answers and responses not in existence on June 17, 1970. The original answers ordered filed on June 17, 1970, have never been filed. In this second set of answers and responses the defendant VWoA undertook to give information of which it disclaimed knowledge in the served but unfiled original set of answers to interrogatories. Some of the original unserved answers and responses are set out in parallel columns below:

| Interrogatory No. | Original unfiled set | Second Set filed July 2, 1970 |
| --- | --- | --- |
| 27 | "VWoA has no knowledge of the designs of the windshields." | "VWoA has no knowledge of the designs of the windshields." |
| 35 | "Not within the knowledge of VWoA." | "The windshield is secured by a rubber gasket which is sufficient to retain the windshield in place under all normal and proper driving conditions." |

| Interroga-<br>tory No. | Original<br>unfiled set | Second Set<br>filed July 2, 1970 |
|---|---|---|
| 36 | "Not within the knowl-<br>edge of VWoA." | "The question is ambiguous and lacks a frame of reference. The determination whether the pressure of the windshield against the frame would cause the windshield to push out as designed would depend on many variables including; the size of the pane, the weight of the headform impacting the windshield, the height from which the headform was dropped and the area where the windshield was impacted. The weight or measure of the mounting is only one of several factors in determining whether the windshield would be displaced." |
| 37 | "Not within the knowl-<br>edge of VWoA." | "The windshields were tested with 22 pound headforms used in drop tests." |
| 38 | "Not within the knowl-<br>edge of VWoA." | "Whether the windshield remains intact at 25 mph depends on many variables and the question as now framed cannot be answered. Such important variables as head to glass impact speed, size and weight of the head, the area where the windshield was impacted are some of the variables which have not been specified." |
| 41 | "Not within the knowl-<br>edge of VWoA." | "The specifications given by VWAG to the windshield manufacturers designated the size, shape and optical qualities and the State and Federal requirements in effect at the time of the manufacture of the subject vehicle." |
| 42 | "Not within the knowl-<br>edge of VWoA." | "Until July 1967 the replacement windshields contained a .015 inch plastic inner layer. From July 1967 to date the replacement windshields ordered from the glass manufacturers contained a .030 inch plastic inner layer." |

| Interrogatory No. | Original unfiled set | Second Set filed July 2, 1970 |
|---|---|---|
| 44 | "Not within the knowledge of VWoA." | "This information is not presently available to either VWoA or VWAG." |
| 45(b) | "Not known to VWoA." | "Information not available to either VWoA or VWAG." |
| 45(c) | "Not known to VWoA." | "Yes." |
| 47 | "Not to knowledge of VWoA." | "Yes, but specific information not available at this time." |
| 47(a) | " | " |
| 47(b) | " | " |
| 48 | "Information not presently available to VWoA." | "Yes, but specific information not available at this time." |
| 54 | "Not to the knowledge of VWoA." | "The seat latches were tested in accordance with SAE recommended practice J–879. These tests were performed by the Body-Testing Group of the Technical Development Department of VWAG. All results complied with Federal and State and SAE recommended requirements." |
| 55 | "Not known to VWoA." | "Yes." |
| 56 | "Not known to VWoA." | "The cost difference is 75 cents." |
| 57 | "Information not presently available to VWoA." | "Information not presently available to VWoA." |
| 60 | "This interrogatory is unintelligible and therefore cannot be answered." | "This interrogatory is unintelligible and therefore cannot be answered." |

(Answers were later supplied for interrogatories 44 and 48. Partial answers were later supplied to interrogatories 57 and 60 in the answers provisionally filed on September 14, 1970.)

———◆———

The July 2, 1970, filing (1) amounted to a clear violation of the order of June 17, 1970, which specifically requested that the answers which had been served prior to June 4, 1970, be filed and (2) constituted an unauthorized amendment of the answers out of time and without leave of Court, which is prohibited by the Federal Rules of Civil Procedure, Local Rule 20 of this Court and the rule followed in Parrett v. Ford Motor Company (W.D.Mo.) 52 F.R.D. 120. Further, in respect to interrogatories Nos. 35, 36, 37, 38, 41, 42, 44, 45(b) and 45(c) de-

fendant had answered in the responses originally served on plaintiff, "Not within the knowledge of VWoA." ("VWoA is the short reference used in its answers to interrogatories by Volkswagen of America, Inc., in reference to itself. "VWAG" is used to signify defendant Volkswagenwerk, A.G.) Further, it must be noted at the outset that defendant VWoA had by the date of the trial setting herein never filed any answer within the meaning of the Rules of Civil Procedure to interrogatories 47(a) or 47(b). Under Rule 33, F.R.Civ.P., an evasive statement to avoid answer is no answer. There was neither a purported responsive answer, a partial answer or even an unresponsive or evasive answer to interrogatories 47(a) and 47(b). The failure to answer at any time interrogatories 47(a) and 47(b) is apparent from the answers set out above.

When defendant VWoA sought no protective order in respect to interrogatories 27, 35, 36, 37, 38, 41, 42, 44, 45(a), 45(b), 47(a), 47(b), 48, 54, 55 and 56, nor any extension of time on a showing of good cause therefor, but rather originally unilaterally disavowed, as if doing so with finality, any knowledge of their subject matter, its later unilateral and unauthorized supplying of partial answers constituted an admission that the original disavowals and claims of unavailability of knowledge were false answers made with knowledge of their falsity. See Parrett v. Ford Motor Co., *supra*. Further, the filing of a different set of answers other than those clearly called for by the Court order can only be viewed, under those circumstances, as an untimely attempt to change the record material to a ruling on plaintiff's motion of June 4, 1970, to compel further answers, without leave of Court. Because the untimely partial answers of July 2, 1970, were not properly filed with leave of Court, the Court, in its order entered on July 15, 1970, treated the answers originally served on plaintiff as those to which the motion of plaintiff was addressed. Consequently, the order granted

in totality the motion of plaintiff to compel further answers to interrogatories. The order required defendant VWoA "to make further answers to interrogatories in accordance with the above and foregoing [order] within 10 days of the date of entry of this order." The required answers were not filed, however, in accordance with that order. Defendant VWoA did not attempt to file further answers until the date of the pretrial conference held herein on September 14, 1970, at which time, as the Court then noted, the proposed answers were "filed conditionally without prejudice to the invocation of sanctions."

Further, since the conditional filing on September 14, 1970, of the further interrogatory answers by defendant VWoA, it has been ascertained by the Court that the further answers to most of the interrogatories to which further answers were directed to be filed by the order of July 15, 1970, have not sufficiently answered the interrogatories. Even considering the answers filed without leave of Court on July 2, 1970, and those filed with conditional leave on September 14, 1970, the discovery made by VWoA has been incomplete. A summary of the nature of the interrogatories and the answers is as follows:

(1) Interrogatory No. 4 inquires whether or not defendant had "any personnel in charge of product safety during the years 1964 to the present." The answer filed on July 2, 1970, stated that from June 1, 1967, Mr. H. Kirstein, 818 Sylvan Avenue, Englewood Cliffs, New Jersey, was the person in charge. No further answer was contained in the answers sought to be filed on September 14, 1970. The former answer omits to state who served in such capacity before June 1, 1967, and the length of Mr. Kirstein's service and who served after him.

(2) Interrogatory No. 33(c) inquires into "the name and date of each

magazine or periodical in which Volkswagen of America, Inc., has advertised such product [the 1966 model Series 1300 Volkswagen] in 1965, 1966, 1967, 1968, 1969 and 1970." The answer filed on July 2, 1970, was "National magazines such as Time, Life, Newsweek, Sports Illustrated, New Yorker and Look." In the order compelling further answers, the Court stated: "The answer is therefore plainly unresponsive in omitting the dates of each periodical in which advertisements appeared." In the answers of September 14, 1970, defendant VWoA offered nearly complete answers, but failed to give the date of the 1965 issue of *Car and Driver;* the date of a 1965 issue of *Look;* and also, plaintiff complains, failed to list any dates or publications from September 1966 to 1970. (Defendant contends, as noted *infra,* advertising of the 1300 Series Volkswagen Sedan was not continued after 1966.)

(3) Interrogatory No. 33(e) inquires into the name, or other designation, address and date of each radio or television network in the Kansas City, Missouri, trade area over which any advertisement of such product was broadcast in 1965, 1966, 1967, 1968, 1969, and 1970. The answer filed on July 2, 1970, stated "No radio advertising. Major network television which goes into the Kansas City area." The order of the Court of July 15, 1970 stated that "Defendant should be compelled . . . to specify the date of each television broadcast." The answers of September 14, 1970, included dates for 1965 and 1966, but none from January 1967 to the present.

(4) Interrogatory No. 41 requires specifications and related information for such windshields given each manufacturer who supplied replacement windshields for the 1966 vehicles in 1965 to 1970, inclusive. The answer of July 2, 1970, was "The specifications given by VWAG to the windshield manufacturers designated the size, shape and optical qualities and the State and Federal Requirements in effect at the time of the manufacture of the subject vehicle." In the order of July 15, 1970, the Court ruled that "the information sought is either within the knowledge of defendant or can be discovered by it." No further answer was made in the interrogatory answers conditionally filed September 14, 1970. The answer is *deficient in that it does not set forth* the actual specifications and related information for such windshields.

(5) Interrogatory No. 42 requests the defendant to "State the type and size plastic laminate interlayer ordered from manufacturer for such replacement windshields in each of the following years: 1965, 1966, 1967, 1968, 1969 and 1970." The answer filed July 2, 1970, was that "Until July, 1967 the replacement windshields ordered from the glass manufacturers contained a .015 inch plastic inner layer. From July 1967 to date the replacement windshields ordered from the glass manufacturers contained a .030 inch plastic inner layer." No further answer was made on September 14, 1970. The answer of July 2, 1970, is deficient. In the order entered on July 15, 1970, the Court treated the motion to compel as having been made to the unfiled answers earlier served on plaintiff by defendant, which plaintiff contended contained the insufficient answer. Then the Court ruled that the information was available to defendant VWoA. The only answer (filed on July 2, 1970) is deficient because no information is given respecting the type of plastic interlayer.

(6) Interrogatory No. 45 requests defendant to "State whether any employees, agents or officers of Volkswagen of America, Inc., or Volkswagenwerk Aktiengesellschaft are members of the Society of Automotive Engineers" and if so, "Whether or not such person or persons have attended meetings of such society and, if so, where and when since January 1, 1963." The answer filed July 2, 1970, was "Information not available to either VWoA or VWAG." The Court ruled on July 15, 1970, that the information was in fact available to defendant. The answer filed on September 14, 1970, was as follows:

"H. Burns, 1965, 1966; Dr. K. Peter, 1967, 1970; Dr. F. Goes, 1967, 1968, 1969, 1970; U. Sieffert, 1970; W. Buttgereit, 1969; E. Hitzmeyer, 1969, 1970.

"The actual places where the meetings were held are unknown."

The answer is deficient in that only years are given, and no dates or locations of meetings are specified.

(7) Interrogatory No. 47 inquires "Did any officers, employees or agents of Volkswagen of America, Inc., or Volkswagenwerk Aktiengesellschaft attend any other conferences, seminars or meetings concerned with automotive safety or crashworthiness during 1963, 1964, 1965 or 1966?" Interrogatories 47(a) and (b) inquire into the name and address of each such meeting. The answer filed on July 2, 1970, was "Yes, but specific information not available at this time." The Court ruled on July 15, 1970, that "defendant cannot evade the duty to make discovery by failing to discover information known to its employees." No further answer was made on September 14, 1970. No answer has ever been made to subparagraphs (a) and (b) of interrogatory 47.

(8) Interrogatory No. 54 asks defendant to "State whether such latches [on the two front seats of the Volkswagen model occupied by plaintiff] were tested to determine whether or not they would break if subjected to the force of a human body seated in the rear seat striking them. If so, state: (a) Names and addresses of those who conducted such tests. (b) Where were such tests conducted? (c) Whether chemical analysis was done on the metal used in such latches. If so, state the elements and percentage thereof present. (d) At what speed of impact latches broke. (e) What type tests were conducted. (f) The results of such tests. (g) If results of tests were published. If so, where and when?" Again, defendant originally disavowed any knowledge of the contents of the question in the answers initially served upon plaintiff. Therefore, on July 15, 1970, the Court ruled that "defendant must exercise its duty to obtain knowledge of these things." The answer filed on July 2, 1970, was:

"The seat latches were tested in accordance with SAE recommended practice J-879. These tests were performed by the Body-Testing-Group of the Technical Development Department of VWAG. All results complied with Federal and State and SAE recommended requirements.

"The ratchet of the seat runner on the bottom of the car was made out of steel—ST 2LG GBK. The chemical analysis is as follows: C–0.10%, SI–0.03–0.20%, MN–0.20–0.45%, P–0.06%, S–0.05%. The rest is FE.

"The guide bar on the seat with the locking device was made out of steel—see 15 LG. The chemical analysis is C–0.12–0.18%, SI–0.-15–0.35%, MN–0.25–0.50%, p–0.-45%, S–0.45. The rest is FE."

No further answer was made on September 14, 1970. The answer fails to state whether the seat latches were tested to determine whether they would break if subjected to the force of a human body in the rear seat striking them and also fails to state the names and addresses of the persons who conducted the tests or where the tests were conducted. The conclusion about compliance with Federal and State and SAE recommendations is not responsive and is not factual in nature.

(9) Interrogatory No. 57 asks "What percent of Volkswagen of America, Inc.'s annual budget was spent for advertising in 1964, 1965, 1966, 1967, 1968, 1969, and 1970." The original answer filed July 2, 1970, was that the information was "not presently available to VWoA." The Court ruled on July 15, 1970, that the defendant "should have this information." The answer filed September 14, 1970, was as follows:

"1965, 1.5%; 1966, 1.2%; 1967, 1.7%; 1968, 1.1%; 1969, 1.3%."

The answer is still deficient in omitting answers for the years 1964 and 1970.

■ Within ten days of the long standing trial setting of October 5, 1970, defendant VWoA, after discovery had closed, sought leave to file supplementary answers containing a third version of the information available to it. If these supplementary proposed answers were timely tendered in good faith under recently amended Rule 33, F.R.Civ.P., they could have been accepted by the Court. They cannot be considered, however, because (1) they are not tendered in good faith under Rule 33, F.R.Civ.P., (2) they are untimely, and (3) they are insufficient to make the earlier answers complete.

The supplementary answers are untimely because they are not within the time further answers were ordered on the motion to compel further answers, namely on July 15, 1970, ordering the answers filed by July 25, 1970.

■ On September 14, 1970, at a pretrial conference trial counsel undertook to excuse the defendants on the ground that defendant's house counsel was controlling discovery.[2] The control of discovery by defendant's house counsel, without grant of authority to trial counsel, is a violation of the longstanding practice of this Court requiring discovery to be made under the direction and control of trial counsel (Cf. Local Rule 20) and has obviously been calculated to delay and obstruct the completion of discovery and the early trial of this cause. Rather than request extensions of time in which to gather information, however, defendant VWoA chose initially to disavow

2. The following are statements of local counsel for defendant in colloquy with the Court during the conference held in this case on September 14, 1970, respecting his authority to conduct discovery in the case:

"I apologize to the Court and counsel for the tardy answers. Your Honor, this is a situation in which I represent the insurance company for these people, but the litigation to a large extent, is controlled by their corporate counsel in New York, who undertake to prepare the answers to interrogatories, and I have very little to say about the matter."
THE COURT: "What you are saying is that you are appearing here in violation of the local rules of the court."
MR. RISJORD: "I do represent these defendants. I have power to speak for them. When it comes to making an interrogatory answer, I can suggest answers to them. They furnish me the answers and have them signed in New York."
THE COURT: "That isn't consistent with what you said just a moment ago. You said you represented the insurance company and house counsel for the corporation had the major control of the matters, and that indicates on the face of it that you do not possess the authority which is required by local rules."

knowledge of the information required of it. Apparently it was determined to delay discovery, to evade the obligations to disclose critical information available to it, and to withhold from the record the little information given. Only to avoid sanctions did VWoA make some partial information available. Defendant VWoA's obstruction and delay of discovery required the removal of this cause from the accelerated civil trial docket set for October 5, 1970.

Because of the incomplete status of discovery in the case the plaintiff was deprived of a trial at the usual time.

As noted above, by its motion filed herein on September 24, 1970, defendant VWoA moves "that it be granted leave of court to file supplementary answers to interrogatories on the grounds that the information contained in said supplementary answers had heretofor (sic) been unavailable to defendant, Volkswagen of America, Inc., and that with respect to some of the interrogatories, plaintiff did not clarify what information was sought until September 15, 1970," on which date, at the direction of this Court, plaintiff filed its statement of the respects in which it contended that the proposed answers submitted by defendant (on July 2, 1970, and September 14, 1970) were inadequate. This contention of the vagueness of the interrogatories is not credible at this point when defendant VWoA did not file any timely objection to the interrogatories on this ground and sought no pretrial conference to submit its contentions.

In the proposed answers tendered with the motion, the answer to interrogatory No. 4 now appears to be more complete in its specification of G. Storbeck as the person in charge of product safety from 1964 to date "with respect to state regulations" and H. Kirstein from June 1967 to June 1970 in respect to federal regulations. However, no answer is given in respect to federal regulations for 1964 to June 1967, nor for state regulations from June 1967 to 1970. Defendant, without posing any formal objection, states in its suggestions in support of its motion for leave to file supplementary answers that the interrogatory is vague:

"Part of the problem with the answers to plaintiff's interrogatories is that the interrogatories themselves are vague or based upon assumptions made by the plaintiff's attorneys which are not entirely valid. For example, interrogatory 4 asks whether 'you had any personnel in charge of product safety'. Prior to the appointment of H. Kirstein in June, 1967, the only Volkswagen of America employee who might qualify is G. Storbeck, whose deposition the plaintiff has taken. His function was limited to obtaining state governmental approvals, some of which had to do with safety features. He testified that he does not design, research, test, or instigate product safety. These functions were all undertaken by the factory engineers employed by Volkswagenwerk, A.G., a number of whom have been interrogated by the plaintiff. Since the interrogatories have dual functions of discovery and possible admissions, defendant, Volkswagen of America, Inc., understandably did not want to be placed in the position of admitting that G. Storbeck was in charge of all product safety. The tendered supplemental answer hopefully makes this clear and gives plaintiff the desired information."

But the interrogatory was not vague in simply requiring the name of the person in charge of product safety for certain years. Neither can the defendant construe this interrogatory to be a personal interrogatory when the personal pronoun "you" clearly refers to the corporation, Volkswagen of America, Inc., and an answer is to be made on its behalf. Further, in view of the foregoing admission that certain persons, identified only as "engineers," in some respects direct the processes of designing, researching, testing and instigating product safety, the answer is admittedly incomplete.

Defendant contends that the answer offered July 2, 1970, to interrogatory No. 33(c) is complete:

"Interrogatory 33(c) refers to advertising 'such product' being obviously a reference to the product description in Interrogatory 33(a). The interrogatory assumes that 'such product' was advertised during each of the 6 enumerated years. The same assumption is carried forward in Interrogatory 33(b) and 33(e). This information has been extremely arduous and costly for Volkswagen of America to obtain from the independent advertising agency which was required to employ clerks to work overtime after regular hours in an attempt to contact local Kansas City area subcontractors and advertisers to obtain the information. This has now been obtained for the product which was advertised only during the time the product was offered on the market. The 1300 Series Volkswagen Sedan was not continued after 1966.

"Plaintiff's complaint about the answer is based upon the false assumption that 'such product' was advertised during the years specified, which is not the fact."

Even so, interrogatory 33(c) is still not answered in respect of the certain dates of advertisings which have been pointed out above.

The answer now proposed to be given to interrogatory No. 41 is as follows:

"The following specifications were submitted by Volkswagenwerk Aktiengesellschaft ('VWAG') to the glass manufacturers.

| | |
|---|---|
| Length | 41.8 inches |
| Width | 16.1 inches |
| Curvature in Length | .75 inches |
| Curvature in Width | .158 inches |

"Further, it was required that the glass manufacturers supply windshields that complied with all State and Federal Regulations."

The proposed answer appears now to be more responsive to the interrogatory as phrased, but is inexcusably late. Defendant attempts to excuse the late answer by stating as follows:

"With respect to Interrogatory 41, defendant originally understood that plaintiff was interested in knowing what type of specification and information was given to the manufacturer, one of the evidenciary (sic) issues being whether Volkswagen of America or Volkswagenwerk, A.G. furnished to the glass manufacturers specific requirements for laminate thickness or whether those requirements were in fact formulated by glass manufacturers themselves. Since it is now apparent that plaintiff's attorney desired the actual measurements to the windshield, they have been obtained from Volkswagenwerk, A.G. and are contained in the tendered answers. Since the manufacturers themselves developed the specifications for the structure of the laminated windshield and themselves obtained approvals for compliance with state and federal regulations in the U.S.A., these are not 'specifications and related information * * * as was given' to the manufacturer."

In view of the clarity with which the original interrogatory was phrased, however, it is apparent that the lateness of the answer is not thereby excused. Defendant did not ask for a protective order or additional time to answer or timely object on the grounds of vagueness. Further, in view of the foregoing explanation, it is obvious that defendant has not yet offered to answer the interrogatory completely by supplying plaintiff with what reference it made to the "structure of the laminated windshield" in order to obtain the particular one obtained from the manufacturers.

No further answer is tendered with respect to interrogatory No. 42. Defendant explains, in its suggestions filed September 24, 1970, as follows:

"Although plaintiff's Interrogatory 42 simply asks for the 'type and size

plastic laminate' it is now apparent that what they want is the 'HPR, moisture content, etc.'. Not only is this information not within the knowledge of Volkswagen of America, but neither is it within the knowledge of Volkswagenwerk, A.G. which, as explained in answer to Interrogatory 41 does not make this type of specification. Volkswagenwerk, A.G. is attempting to obtain the chemical composition from the glass manufacturer who in all probability must obtain it from Monsanto Chemical Company, manufacturer of the laminate in question. This information will be furnished immediately to the plaintiff upon receipt. We wish to point out to the Court that the information the plaintiff now specifically requests is not implied by the original interrogatory nor any conversations between counsel prior to the pre-trial conference."

But the lateness of the answer cannot be excused when no attempt to respond to the question of "type" to the best of current ability was made, nor any protective order asked for or objection made in this regard.

The answers to interrogatories Nos. 45(d) and 47 are now more responsive, but not yet complete, as offered to be answered by the supplementary answers now sought to be filed:

"45(d) The meetings attended by the individuals previously named in the years previously listed were all held in Detroit, Michigan

"47. To the best of VWoA's knowledge the following employees of VWAG attended conferences dealing with automotive safety or crashworthiness as follows:

(a) Dr. Karl Peter

(b) February 1966, Washington, D. C., General Service (sic) Administration ('GSA')

(c) Mr. A. Grotewohl

(b) (sic) February 1966, Washington D. C., GSA meeting

(a) Dr. W. Moerchen

(b) April 1966, Washington, D. C. GSA meeting

(a) Dr. F. Goes

(b) May 1966, Washington, D. C., GSA meeting

(a) Mr. E. Hitzmeyer

(b) October 1965, San Francisco, California, Highway Patrol."

Defendant addresses itself to the lateness of the answers as follows:

"Interrogatories 45 and 47 appear simple but have required the contacting of literally hundreds of engineers and searching their memories as to when and where they may have attended SAE meetings as much as $7\frac{1}{2}$ years ago and what other conferences, seminars or meetings they may have attended concerning 'automotive safety or crashworthiness' as much as 7 years ago including the dates of attendance, etc. These are largely matters of individual choice among the engineers for which there is no record kept. The tendered answers are the best information based upon the recollection of those who recall such attendance. If the answers are imprecise it is only because the question is impossible to precisely answer, human memory being what it is. The interrogatory is equivalent to polling the local bar association as to what legal seminars and conferences they have attended in the past 7 years."

Usually reference to expense accounts, diaries, reports and other data furnishes ready answers to interrogatories of this type. Defendant, however, did not object or seek an extension of time or protective order to answer these interrogatories. Rather, it originally simply disavowed any knowledge of the information. With respect to interrogatories such as 45 and 47, it can clearly be seen that the timeliness of production of the

information is of the essence, since additional discovery must be based upon the answers if they are to be fruitful during the discovery process. In this respect, defendant succeeded in withholding the rather limited information contained in the answers until a few days before the Fall 1970 accelerated civil jury trial docket of this Court was scheduled to begin. This conduct was an obstruction of discovery with respect to this information. As noted above, defendant had long advance notice of the placement of this case on the accelerated civil jury trial docket. Further, as noted above, even in respect to the answers sought to be given to interrogatory 45 on September 14, 1970, no dates or locations or titles of meetings are specified.

The offered answer to interrogatory No. 54 is as follows:

"The steel in the ratchet is able to withstand a force of from 45,500 to 59,800 pounds per square inch. The steel in the guide bar is able to withstand a force of 71,000 pounds per square inch. The testing is done by the steel manufacturer and the results are filed with the Government of the Federal Republic of West Germany."

In the suggestions filed in support of leave to file the answer, defendant states as follows:

"Interrogatory 54, relating to a subject which has neither been pleaded nor stipulated to be an issue in the case, is a matter of information obtainable only from the steel manufacturer. Neither Volkswagen of America nor Volkswagenwerk, A.G. undertook to make stress tests on these automobile parts. The factory orders a certain type of steel for each of these parts and the Federal Republic of West Germany specifies to the steel manufacturer the performance requirements of each grade of steel."

■ The defendant VWoA has failed to recognize that there is a duty to discover all information available to a corporation, through its officers, employees and others. "Under the Rule [33, F.R. Civ.P.] as amended, answers to interrogatories addressed to a corporation or other juridical person must speak as of the composite knowledge of the party, whether or not any officer thereof has personal knowledge of the facts." 4 Moore's Federal Practice ¶ 33.07, p. 33–44, n. 6 (1970 ed.). That statement, however, does not excuse the lateness of the answer. Defendant made no objection on the above grounds. Furthermore, because more discovery must admittedly be predicated upon the proposed answer, the late tender of this answer amounts to an effective obstruction of discovery in respect of this information. And the offered answer still fails directly to state whether the latches would break if subjected to the force of a human body seated in the rear seat striking them.

No further answer is offered with respect to interrogatory No. 57, which is deficient in the respects noted above.

■■ Both under the amended Federal Rules of Civil Procedure and the existing Rules, the sanction of default judgment is justified.[3] This case is an

---

**3.** This case is not unlike that of Green v. Shepherd Construction Co. (N.D.Ga.) Civil Action No. 11740, in which Ford Motor Company initially denied knowledge of a series of crucial discovery issues and later made answers indicating that the initial disavowal of knowledge was false. Some of the failures to make discovery in that case are as follows:

(1) Ford denied that any "Technical Services Laboratory" existed. Later, the deposition answers of its employees evinced familiarity with such a laboratory. Further, the laboratory had a listed telephone number. After recognizing that such a laboratory existed, Ford still refused to answer questions regarding the personnel and their duties in the laboratory on the grounds that the interrogatory was "burdensome."

(2) Ford refused to produce a Technical Service Bulletin #785 dealing with the rear spring or rear spring assem-

example of the frustration of the judicial process which results when a defendant corporation refuses to give trial counsel the authority required by the Local Rules and attempts to handle matters through house counsel who are either not acquainted with the pretrial rules or not predisposed to obeying them.[4] Under the provisions of new Rule 37, F.R.Civ.P., sanctions are justified without reference to whether the unexcused failure to make discovery was wilful.[5]

bly of the type on the model being litigated. First it denied that such a bulletin existed. Then it later recognized that it did exist.

(3) Ford denied any connection with its Detroit Testing Laboratory and refused throughout discovery to answer with candor whether it was part of its organization.

(4) Ford denied that it had had any correspondence relating to spring leaf complaints.

(5) Ford gave vague and inconsistent answers respecting whether it had any pre-testing procedures for an eye main spring leaf and refused to reconcile them, or to answer directly, while insisting that the answers were not in conflict.

(6) Ford initially denied that it had had any correspondence on file with the spring suppliers. It finally admitted that there was some. Then it pleaded diligence in trying to locate and produce it. But the employee in charge of trying to find it finally testified that he had made no effort to locate the correspondence.

(7) Ford maintained that no Quality Control system or division existed. But its district manager's deposition testimony was contrary.

(8) East Tennessee Ford Company produced 8 warranty claims for discovery to Ford house counsel for this action. Ford produced only 4 of them to the plaintiffs in response to discovery.

(9) There was further evidence that Ford took straightforward answers given them by the spring suppliers to answer interrogatories and rewrote them in order to make them vague, ambiguous and evasive. There was also some evidence that Ford contacted them orally to tell them not to make full discovery.

Judge Edenfield concluded that there had been in this case a "pattern of evasion and lack of candor running through Ford's response to discovery" and that, as in Bollard v. Volkswagen, "a trial in the instant matter has been delayed because of Ford's behavior." Judge Edenfield declined to dismiss Ford's pleadings "either under Rule 37(d) or Rule 37

(b)(2)(iii) [because] an element of wilfulness would have to be shown, which would necessitate a possibly lengthy hearing." But that was under old Rule 37. A finding of wilfulness is not necessary under the new Rule although it is relevant to the question of the appropriateness of the type of sanction imposed. F.R.Civ.P. 37, amended effective July 1, 1970, and Advisory Committee Note thereto, 48 F.R.D. at 539. There it is made clear that, under the new Rule 37, a finding of wilfulness is not *necessary*, although it may be *relevant* to the question of whether default judgment is proper. See note 6, infra. New Rule 37 expressly provides that such sanctions "as are just" should be imposed. Further, as is evident from the facts recited in the body of this opinion, the violations of the federal discovery rules continued after the effective date of the new federal discovery rules, July 1, 1970, and were intentional and wilful.

4. Experience has shown that, for some reason, possibly to avoid class actions, defendants in motor vehicle products liability cases based upon defects in design and workmanship have been unusually evasive and loathe to make discovery. Parrett v. Ford Motor Company (W.D. Mo.) 52 F.R.D. 120.

5. The Advisory Committee notes state that, under old Rule 37, the sometime use of "failure" to make discovery and the sometime use of "refusal" bred confusion, with some courts importing into "refusal" a requirement of "wilfullness." But:

"In Societe Internationale v. Rogers, 357 U.S. 197 [,78 S.Ct. 1087, 2 L.Ed. 2d 1255] (1958), the Supreme Court concluded that the rather random use of these two terms in Rule 37 showed no design to use them with consistently distinctive meanings, that 'refused' in Rule 37(b)(2) meant simply a failure to comply, and that wilfullness was relevant only to the selection of sanctions, if any, to be imposed. Nevertheless, after the decision in Societe, the court in Hinson v. Michigan Mutual Liability Co., 275 F.2d 537 (5th Cir. 1960) once again ruled that 're-

 Under the controlling rule of Societe Internationale Pour Participations Industrielles v. Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255, 1267, a default judgment is a proper sanction if the failure to make discovery is due "to wilfulness, bad faith, or any fault" and not "due to inability." The new provisions of Rule 37, F.R.Civ.P., are intended to bring the rule into harmony with the holding in Societe Internationale Pour Participations Industrielles v. Rogers, *supra.*[6] See also Dorsey v. Academy Moving & Storage, Inc. (C.A.5) 423 F.2d 858, to the effect that:

"The sanctions available under Rule 37(b) . . . are predicated upon the presence of such factors as willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence." 423 F.2d 860.

In the case at bar, the failure to make timely discovery was intentional. Without objecting or seeking protective orders or extensions of time, defendant VWoA sought to have discovery completed only on its own time schedule and totally frustrated with respect to certain crucial items. This finally impeded trial on the merits and made it impossible to discern the merits of the defenses and for plaintiff to support her complaint with proof of certain issues.[7]

---

fusal' required wilfullness. Substitution of 'failure' for 'refusal' throughout Rule 37 should eliminate this confusion and bring the rule into harmony with the Societe Internationale decision." 48 F.R.D. at 539.

6. The requirements of Societe Internationale Pour Participations Industrielles v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255—"wilfullness, bad faith, or any fault of petitioner"—are apparently to be read in the disjunctive. In Dorsey v. Academy Moving & Storage, Inc. (C.A.5) 423 F.2d 858, 861, it appears that wilfulness is to be considered as simply a factor in determining the appropriate sanction rather than the sole determinant of whether the complaint or answer should be dismissed:

"The sanctions available under Rule 37(b) for such conduct are predicated upon the presence of such factors as willful disobedience, gross indifference to the rights of the adverse party, deliberate callousness, or gross negligence."

In that case a dismissal of the complaint was reversed by the appellate court because none of the necessary findings were made:

"The court made no finding that the plaintiff's failure to produce the requested documents was either willful or in bad faith and finding that the plaintiff had not made a diligent effort to obtain the documents." 423 F.2d at 861.

In the case at bar, however, the finding is made that the default in making dis-

covery was intentional and wilful and that it was not due to the inability of VWoA to make the discovery, but rather due to VWoA's lack of diligence.

7. In Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215, it was held that punishment of a defendant contemner by depriving him of a hearing on the merits is violative of the due process requirements of the Federal Constitution, but this holding was limited by Hammond Packing Company v. Arkansas, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530, "by holding that a court could properly strike an answer and enter default judgment under circumstances where a party fails to produce documents as ordered." Norman v. Young (C.A.10) 422 F.2d 470, 473. See also Anno., 14 A.L.R.2d at 593 to the following effect:

"The existence of the distinction between mere punishment of a party's violation of an order as for contempt and striking a pleading and entering judgment by default under statutory authority allowing such procedure, where violation of an order indicates the lack of merit in a defense, has been recognized in many subsequent cases. See, for example, Peitzman v. Illmo (1944, C.A. 8th Mo.) 141 F.2d 956, cert. den. 323 U.S. 718, 65 S.Ct. 47, 89 L.Ed. 577, reh. den. 323 U.S. 813, 65 S.Ct. 112, 89 L.Ed. 647; Duell v. Duell (1949) 85 U.S.App.D.C. 78, 178 F.2d 683, 14 A.L.R.2d 560. And see Edison Electric Light Co. v. Tipless Lamp Co. (1911) 72 Misc. 116, 130 N.Y.S. 1089."

In Norman v. Young (C.A.10) 422 F.2d 470, 473, furthermore, it was noted that "trial courts have inherent power to presume the bad faith and untruth of an answer where the proof was suppressed provided it was essential to the disposition of the case."[8] See also Marriott Homes, Inc. v. Hanson (W.D.Mo.) 50 F.R.D. 396, 400, holding that when the default in making discovery is due to the fault of defendant, and the default makes it "impossible to ascertain whether the allegations of his answer . . . have any factual merit", default judgment is justified. In the complaint herein, plaintiff alleges the theories of negligence in the breach of duty to warn of a defective condition and of duty to inspect and test. She also alleges negligent designing, specification and manufacture of the windshield and car seat and breach of the warranty of fitness for a particular purpose. The answer of VWoA denies each of the essential allegations. But, by the refusal to state the name of the person in charge of product safety at the crucial times, whether the latches on the front seats were tested for breakage when struck with the force of a human body in the back seat, and other items of requested information, defendant VWoA has refused to make discovery of information which was relevant, calculated to lead to the discovery of admissible evidence and possibly material in the trial of this action. This may indicate that defendant VWoA was unwilling to submit the facts in respect of the alleged unsafe condition of the windshield and of the seats in the automobile. It is also entirely possible that the information not disclosed by VWoA would support plaintiff's claim that VWoA warranted the safety of the vehicle and its components through advertising or other means and that there was a latent defect in design or workmanship in the construction of the vehicle.

Clearly, sufficient discovery has not been made by defendant VWoA. Even if sufficient answers were now made, they would not permit timely additional discovery to be made (particularly as such might be dependent upon the untimely answers to interrogatories) in time for a current trial of this cause.[9]

8. The Court stated in that case that: "Appellants argue that on the basis of Societe Internationale Pour Participationes Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), the entry of default judgment was, as a matter of law, erroneous. On the facts the cases are distinguishable. In Rogers, although there was a failure to produce documents, there was an obvious good faith attempt to comply with the court order; with the Normans no such finding is permissible. Notwithstanding the presence of bona fides, the Rogers court held relief under Rule 37 to be proper and further stated that 'refuses to obey' simply means 'failing to comply with an order.' Thus, Rule 37 relief was clearly permissible in the Norman case. However, as Rogers held, Rule 37(b)(2)(iii) remedies are to be used only where there appears 'willfulness, bad faith, or any fault of petitioner.' In this regard. Hammond Packing Co. v. Arkansas, 212 U.S. 322, 29 S.Ct. 370 [53 L.Ed. 530] (1909) and Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897) must be considered. Briefly, the latter case held that an answer could not be stricken out and all right to defend could not be denied as a mere punishment for failing to comply with a court order. Hammond pared the Hovey decision by holding that a court could properly strike an answer and enter default judgment under circumstances where a party fails to produce documents as ordered. The court stated that trial courts have inherent power to presume the bad faith and untruth of an answer where the proof was suppressed provided it was essential to the disposition of the case." 422 F.2d at 473.

9. See Anno., 2 A.L.R.Fed. 811, 822. Clearly this is not a case conforming to the rule that "if a party's failure to produce is shown to be due to inability fostered neither by its own conduct nor by circumstances within its control, it is exempt from the penal sanctions of the

The belated and incomplete attempt to make the discovery noted above by supplying answers on September 14, 1970, and moving on September 24, 1970, to further supplement the answers is inexcusable in view of the fact that the time for completion of discovery in this cause had passed and defendant VWoA had known of the setting of this cause on the accelerated civil trial docket for a long time.[10]

Rule 37(d), F.R.Civ.P., provides in part that:

"In lieu of any order [imposing sanctions] or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the

failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."

Under that provision, an award of expenses and attorney's fees should also be made.[11]

It is therefore

Adjudged that default judgment be, and it is hereby, entered against defendant Volkswagen of America, Inc., on the issue of liability only.

In order that there be a complete record for disposition of this case on an appeal, the case will be tried before a jury on all issues with a separate verdict on liability and on damages. It is further

---

Rule." *Id.* at 823. See also, for a consideration of wilfulness or bad faith, Diapulse Corp. of America v. Curtis Pub. Co., 374 F.2d 442 (2d Cir. 1967); Trans World Airlines, Inc. v. Hughes, 332 F.2d 602 (2d Cir. 1964); Hendricks v. Alcoa Steamship Co., 32 F.R.D. 169 (E.D.Pa. 1962); Textile Products v. Formax Mfg. Co., 13 F.R.D. 302 (E.D.Mich.1952); cf. Link v. Wabash R. Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); Pioche Mines Consolidated, Inc. v. Dolman, 333 F.2d 257 (9th Cir. 1964). Under these circumstances, it is said that a court has inherent power to enter default judgment for deliberate violation of an order or orders made under its rules. Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. McGranery (D.D.C.) 14 F.R.D. 44, modified on other grounds, Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Brownell, 96 U.S.App.D.C. 232, 225 F.2d 532, cert. denied 350 U.S. 937, 76 S.Ct. 302, 100 L.Ed. 818, reh. denied 350 U.S. 976, 76 S.Ct. 430, 100 L.Ed. 846; Mariott Homes, Inc. v. Hanson (W.D.Mo.) 50 F.R.D. 396.

10. The records of the Clerk of this Court show that on July 10, 1970, counsel for defendant Volkswagen of America, Inc., were sent a notice that a jury trial docket for civil cases would be held during the three weeks beginning September 28, 1970, and that this case might be on it. On August 27, 1970, the docket itself was sent to counsel, on which this

case was listed to be tried during the jury docket.

In Butler v. Pettigrew (C.A.7) 409 F.2d 1205, it was held that the trial court did not err in refusing a default judgment for failure fully to answer interrogatories in a case in which "Plaintiffs made no request of the court prior to trial to require defendants to fully answer or for any sanctions against defendants for their alleged neglect under Rule 37(b), (d) of the Federal Rules of Civil Procedure . . . Furthermore, there is little reason to suppose that plaintiffs' failure to prove reliance was caused by insufficiency of the defendants' answers to the plaintiffs' interrogatories of record." 409 F.2d at 1207. In the case at bar, however, plaintiff moved to compel answers and has submitted two memoranda pointing out wherein defendant's answers are not satisfactory and will impede future discovery and the trial of this case.

11. The finding of wilfulness and lack of diligence supporting the entry of default judgment would support the imposition of money sanctions under this part of the rule. According to the Advisory Committee notes, an *express* finding of "without substantial justification" is unnecessary to the imposition of such sanctions, although substantial justification in fact can defeat the sanctions. See 48 F.R.D. at 539. A lesser showing of fault appears to be necessary to the imposition of money sanctions. See Allied Artists Pictures Corp. v. Giroux (S.D.N.Y.) 50 F.R.D. 151, 14 F.R.Serv.2d 522.

Ordered that plaintiff have and recover of the defendant Volkswagen of Volkswagen of America, Inc., a reasonable sum for her fees and expenses, including attorney's fees for obtaining this order in a sum to be fixed by order of Court.