John N. O'MEARA, on his own behalf
and on behalf of all persons similarly
situated, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 72 C 2386.

United States District Court,
N. D. Illinois, E. D.

March 20, 1973.

On Motion for Class Designation and Objection to Interrogatory May 24, 1973.

Roger J. Kiley, Jr., Edward T. Joyce, Kevin M. Forde, Chicago, Ill., for plaintiff.

James R. Thompson, U. S. Atty., Jack M. Wesoky, Asst. U. S. Atty., Chicago, Ill., for defendant.

MEMORANDUM OPINION

WILL, District Judge.

Plaintiff has brought this action to recover a lump sum readjustment payment from the United States Department of the Navy, to which he claims he is entitled under the provisions of 10 U.S.C. § 687(a), and which the Navy has denied him. The jurisdiction of this court is invoked under 28 U.S.C. § 1346(a)(2).

Defendant has moved to dismiss the action for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P. In the alternative, it moves for summary judgment in its favor.

I

In his complaint, plaintiff alleges he is now, and has been since March 1, 1967, a member of the reserve compo-

nent of the United States Marine Corps. As a member of the Marine Corps, he recently completed a period of active duty of four years, 11 months and 17 days. He alleges that some months prior to his release from active duty he volunteered, but was not accepted, for an additional tour of active duty. Though not alleged in the complaint, plaintiff also requested augmentation into the regular Marine Corps. This request was denied as well.

After his release from active duty, plaintiff applied for readjustment pay under 10 U.S.C. § 687(a). That statute provides, in relevant part:

(a) [A] member of a reserve component or a member of the Army or the Air Force without component who is released from active duty involuntarily, or because he was not accepted for an additional tour of active duty for which he volunteered after he had completed a tour of active duty, and who has completed, immediately before his release, at least five years of continuous active duty, is entitled to a readjustment payment computed by multiplying his years of active service (other than in time of war or national emergency . . .), but not more than eighteen, by two months' basic pay of the grade in which he is serving at the time of his release. . . . For the purposes of this subsection—

(1) a period of active duty is continuous if it is not interrupted by a break in service of more than 30 days;

(2) a part of a year that is six months or more is counted as a whole year, and a part of a year that is less than six months is disregarded; and . . . .

. . .

By virtue of this section, plaintiff claimed a readjustment payment of $9,273.00. Upon defendant's refusal to make any payments, plaintiff initiated this law suit.

## II

The government's motion to dismiss the action is based on its contention that the rounding provision contained in the statute, § 687(a)(2), applies only to the computation of the readjustment payment and cannot be used to meet the five-year eligibility requirement. Since plaintiff has, in fact, served thirteen days less than five complete years, defendant contends he is not entitled to the payment, and therefore has no cause of action.

This argument, in turn, is based on the government's view that the statute is ambiguous, and that we must, therefore, look to the Congressional intent in enacting the statute to determine its meaning. We are urged to consider: 1) that the predecessor to the readjustment pay statute currently before us specifically provided that its rounding provision was to apply only "[f]or the purposes of computing the amount of readjustment pay." Act of July 9, 1956, ch. 534, § 265; and 2) that despite Congress' omission of this limitation in the current statute, Senate Report No. 1876, 87th Cong. 2nd Sess., U.S.Code Cong. & Admin.News 1962, p. 2456, contains a statement that the new bill was "not intended to make any substantive change in existing law." To apply the rounding provision to the eligibility requirement, the government argues, would be to make "[a] substantive change in existing law" contrary to the Congressional intent.

Defendant's contentions are not persuasive. It is well settled that legislative history is irrelevant if the statutory enactment is clear and unambiguous. With respect to the section in question, we agree with the Court of Claims in Schmid v. United States, "that the section is clear and unambiguous on its face and is susceptible, on its face, of only one interpretation." 436 F.2d 987, 989, 193 Ct.Cl. 780 (1971), cert. den. 404 U.S. 951, 92 S.Ct. 283, 30 L.Ed.2d 268 (1971). See also, Cass v. United States,

344 F.Supp. 550 (D.Mont.1972). The phrase, "For the purposes of this subsection," clearly refers to the entire subsection 687(a) which includes both the five year eligibility requirement and the method of computing the readjustment sum. Consequently, as the rounding provision which follows contains no express or implied limitations in it, it must apply to the entire subsection.

There is, therefore, no need to turn to the legislative history of the statute to determine the intent of the enacting legislative body. Only by defendant's introduction of legislative history purporting to show a possible conflict between the Congressional intent and the clear language of the Congressional enactment can any ambiguity be found. It is not the function of courts to utilize legislative history to rewrite an otherwise clear and precise statute.

Even if we were to make such an inquiry, however, we cannot agree with defendant's contention that the legislative history supports its interpretation of the statute. On the contrary, we find the analysis of the statute's history in Schmid v. United States, *supra,* more convincing than the position urged by the government here, and agree with that court in its conclusion that at the very least:

. . . the legislative history of that section does not so clearly evidence an intent inconsistent with the plain meaning of the statutory language as to enable us to depart from that plain meaning. 436 F.2d at 991.

Finding, as we do, that the rounding provision applies to the determination of eligibility, defendant's motion to dismiss for failure to state a claim must be denied.

## III

In addition to requiring five years of continuous active service, section 687(a) also requires that a reserve member of the service either be released from active duty involuntarily or not be accepted for an additional tour of active duty for which he volunteered. Defendant has moved for summary judgment in its favor contending that plaintiff fails to satisfy this aspect of the statute because he never requested an additional tour of active duty. Its study of plaintiff's service record reveals only a request made by him for augmentation into the regular Marine Corps, the denial of which concededly does not entitle plaintiff to the benefits of the statute. Plaintiff both in his complaint and by affidavit, however, states he did apply for an additional tour of active duty and was denied his request.

 While it would appear that this would raise a disputed issue of material fact, our review of the exhibits submitted in support of defendant's motion leads us to conclude that whether or not plaintiff actually applied for an extension is irrelevant. In response to his request for augmentation, plaintiff received a letter, by direction of the Commandant of the Marine Corps, stating in part:

1. Your request, reference (a), for augmentation into the Regular Marine Corps was considered by the Officer Retention Board on 16 March 1972. This Board, convened in accordance with paragraph 5f of reference (b) *also considered you for extension of active duty. It is regretted that you were not selected for augmentation or extension of active duty.* (emphasis supplied)

Even if plaintiff did not, in fact, submit a request for an extension in addition to his request for augmentation, the Marine Corps certainly treated him as having done so and denied him any extension he might have requested. If he had not already filed an extension request, surely it would have served no purpose for him to do so after receiving this letter from the Commandant.

The defendant argues that the Board's gratuitous denial of an additional tour

cannot be used to estop the government since plaintiff would not have been bound by a determination that he *was* accepted for an additional tour if he had not, in fact, requested it. The Commandant has clear authority to act upon requests made by reserve officers for both augmentation and extensions of active duty. Even though technically he may have been without actual authority to deny an additional tour of active duty when no such request was made, surely plaintiff was entitled to rely on the Commandant's implied authority and assume that he need not perform the useless act of applying for something which had already been denied.

■ We also find no merit in defendant's position that, even if plaintiff actually requested an additional tour of active duty, he does not satisfy the requirements of the statute. Citing cases holding that the denial of conditional requests does not constitute involuntary release as required by the statute, defendant contends that, since plaintiff's request for an additional tour was contingent on his not being accepted for augmentation, the request was "conditional" and therefore plaintiff cannot be regarded as having been involuntarily released from active duty.

Defendant misconstrues the very authorities on which it relies. The regulation cited by defendant outlining the types of requests which bar a determination of involuntary release if denied includes only conditions imposed by the serviceman making the request on the additional tour of active duty requested, such as assignment to a particular geographic location or a particular type of duty or being tendered a specific type of contract. *See* Navy Department Comptroller Manual, paragraph 044189–1. Plaintiff's request for an additional tour of active duty imposed no restrictions whatsoever on the additional tour itself. Once his request for augmentation was denied, he was simply volunteering for an additional tour with no conditions attached. Moreover, the Commandant's letter indicates no condition on the extension of active duty as the ground for its denial. Quite properly, neither the regulation nor the other authorities consider this type of alternative request a "conditional" one.

In light of the above considerations, it is clear that there is no legal basis on which defendant is entitled to summary judgment. Consequently, both its motion to dismiss and its motion for summary judgment will be denied. An appropriate order will enter.

## On Motion for Class Designation and Objection to Interrogatory

In a memorandum opinion dated March 20, 1973, we denied the government's motion to dismiss and its motion for summary judgment. A detailed statement of the facts appears in that opinion and need not be repeated here. Briefly, however, plaintiff who had served 4 years, 11 months and 17 days, invoked jurisdiction under the Tucker Act, 28 U.S.C. § 1346, seeking to recover a lump sum readjustment payment from the U. S. Department of the Navy under 10 U.S.C. § 687(a). A motion by the plaintiff to designate this proceedings a class action pursuant to Rule 23, Fed.R. Civ.P., is currently before us, as is an objection by the government to one of the plaintiff's interrogatories. For the reasons hereinafter set forth, the motion for a class designation will be granted and the objection to the interrogatory will be stricken.

### CLASS ACTION

■ The action is brought by plaintiff on his own behalf and on behalf of all persons similarly situated. Plaintiff has proposed that the class be defined as follows:

All persons who were members of the various reserve components of the Armed Forces or members of the Army and Air Force without component who, at any time after Septem-

ber 24, 1966 to date, were released from active duty because he or she was not accepted for an extension of active duty for which he or she volunteered after he or she had completed a tour of active duty and who had completed, immediately before his or her release, more than four (4) years and six (6) months of continuous active duty but less than five (5) years as a commissioned officer, warrant officer or enlisted member.

The government raises three basic objections to the maintenance of this suit as a class action. Each will be discussed in turn.

## I

Rule 23(b)(3), Fed.R.Civ.P., the subsection pursuant to which plaintiff attempts to bring this class action, requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. The government contends that "while there are certain common questions of law and fact, there are distinct and separate litigable factual issues unique to certain members of the alleged class."

This may be, but the issue is whether or not the common questions predominate. The government discusses three possible issues which purportedly show that the common questions do not predominate over the individual questions. The first relates to whether the class member volunteered for an extension of active duty or whether he or she only requested an augmentation into the regular branch of the Service. This question is covered in the proposed definition; in order to be a member of the class, an individual must have volunteered for an extension of active duty.

The second purported separate issue is whether the class member made a timely application for an extension of active duty. Here again is simply a question of definition. Only persons who made

timely application are members of the class. Procedural regularity will be presumed and, if there is a variation, it can be dealt with any time.

The third purported issue is whether the proposed class member conditioned his request for an extension of active duty. Again, the issue is definitional and only persons making unconditional requests will be members of the class.

None of the so-called separate questions envisioned by the government in any way shows that there is any variation between class members in the application of the common question of law, the interpretation of the statute, which is the critical issue in these claims. This common and basic question clearly predominates over any individual factual issues. In fact, the only individual issues raised by the government relate solely to eligibility for membership in the class, not to differences between members.

## II

The government next contends that a class action would not be superior to other methods of adjudication. Relying on Professor Moore's four criteria for determining the superiority of a class action, see 3B J. Moore, Federal Practice § 23.45, it states that because of the amount of recovery for each class member if the defendant is found liable ($8,000 to $10,000 on the average, the government contends), the interest of the individual class members in controlling their own claims is "significant." Illustrative of this, the government contends, is the fact that there are approximately 40 lawsuits now pending across the country seeking the same relief as the instant action.

Counsel for the plaintiff, on the other hand, assert that many of the claims will run in the hundreds, not thousands, of dollars. Moreover, on the government's own showing, the 40 cases represent a minute fraction of the members of the plaintiff class. Unless the gov-

ernment hopes to avoid paying many members who are entitled to the benefits provided by Congress, one class action would appear to be desirable from the point of view of all concerned. If all members of the class were to bring separate suits, the courts would be overwhelmed if the government's estimate of the number of class members is correct.

It is especially difficult to accept this argument when, in the instant action, the essential and critical legal question —namely, the interpretation of the statute—has been resolved in favor of the plaintiff. It would be almost foolish for individual class members to pursue separate actions and thereby relitigate the legal question which they have already won. If class members nevertheless wish to pursue such a course, they may opt out of the class when notice is sent to them.

The government has not contended that the class representative and his attorneys would not fairly represent the class. Indeed, such an allegation would be hard to support given the competence of plaintiff's attorneys. Adequacy of counsel and representation is a most critical factor in deciding whether to declare a class action, and since this point is not in dispute, it would argue in favor of a class designation.

With respect to the 40 lawsuits pending in the other courts, these can be stayed pending the resolution of the class action and thereby conserve judicial and legal resources. Alternatively, all these actions can be consolidated in one action for purposes of discovery pursuant to the rules for multidistrict litigation. However, such a consolidation seems unnecessary since a class ruling would apply to all present litigants unless they opt out. Judge Collinson of the United States District Court in Kansas City, Missouri, has one of these 40 cases pending before him and, so far as we are aware, the only other suit brought as a class action. The government has advised us that none of the other pending suits is a class action. Judge Collinson has informed us that he will stay his action and the motion in that case for a declaration of a class action pending resolution of the instant action which is in a considerably more advanced stage of litigation. If necessary, similar arrangements can be made in the other actions.

Finally, the government argues the difficulties which will present themselves in determining and managing the proposed class discourages the declaration of a class action. An affidavit submitted by the Principal Deputy Assistant Secretary of Defense stated that the screening required to determine the makeup of the proposed class would take approximately 14 months to complete and cost approximately $1.5 million. Assuming the correctness of this estimate, it is clear that such a determination will be a significant burden. However, this burden does not support a conclusion that a class action is not the best method for adjudicating the involved claims. It merely means that over a period of time the government has apparently been engaged in a policy designed to avoid granting a very large number of ex-servicemen and women statutory benefits to which three courts have already found they were entitled.[1] If the government is ultimately found liable to the class members, there is no way that it can avoid what it contends will be a terribly costly procedure to determine all who are entitled to these benefits.

Clearly, the class action is the superior method by which to adjudicate all these similar claims. The government has failed to demonstrate that the class action is not the superior procedural device with which to dispense justice in

1. O'Meara v. United States, 72 C 2386 (N.D.Ill. Mar. 20, 1973) ; Cass v. United States, 344 F.Supp. 550 (D.Mont.1972) ;

Schmid v. United States, 436 F.2d 987, 193 Ct.Cl. 780 (1971), cert. denied 404 U.S. 951, 92 S.Ct. 283, 30 L.Ed.2d 268.

this case. Indeed, it has failed to offer any alternative procedure which would be more efficient.

It is obvious that the government's present intention is to litigate each individual case which is filed seeking to obtain a favorable determination and, at the same time, hoping that few of the potential claimants will even file suit. It has refused, and, we are advised, will continue to refuse to accept any decisions favorable to the ex-servicemen claimants until all appeals are exhausted and then only with respect to the particular case. If the government should obtain a favorable decision in a given case, that will not, of course, be binding on the hundreds of thousands, or millions, of other possible claimants. The only way to bring the issue to a definitive conclusion, one way or the other, is by a class action which will bind all concerned. It will also prevent the statute of limitations from running against individual members of the class who, through ignorance of their possible rights, fail to file their own separate suits.

### III

■ The government's last point in opposition to the motion for a class determination is that a class action under Rule 23(b)(3) may not be maintained in a suit where jurisdiction is based on the Tucker Act, 28 U.S.C. § 1346. This argument is based on an interpretation of United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) that the Tucker Act does not grant jurisdiction over any suit which could not be brought in the Court of Claims. The government argues that a rule 23(b)(3) class action could not be brought in the Court of Claims and that therefore, a Rule 23(b)(3) class action cannot be maintained in the instant case when jurisdiction is based on the Tucker Act.[2]

This precise argument was raised in Rothgeb v. Statts, 56 F.R.D. 559 (S.D. Ohio, 1972) where it was rejected in a well reasoned opinion by Judge Weinman. We adopt Judge Weinman's analysis with respect to this point, and reject the government's position that a class action is prohibited in an action brought under 28 U.S.C. § 1346.

Briefly, Judge Weinman held that United States v. Sherwood, *supra,* "only stands for the proposition that a federal district court in a Tucker Act case may not utilize the Federal Rules of Civil Procedure in a manner which would expand the district court's jurisdiction beyond that possessed by the Court of Claims." 56 F.R.D. at 563. Since in *Rothgeb,* as in the instant case, no question of expansion of jurisdiction existed, he held that *Sherwood* had no application. In addition, he alternatively demonstrated that the class action device was available in the Court of Claims. See Quinault Allottee Assoc. v. United States, 453 F.2d 1272 (Ct.Cl.1972).

Aside from the legal analysis which disposes of the government's argument, it may also be disposed of as a practical absurdity. Clearly, each claim of each class member may be adjudicated in the Court of Claims. Clearly, each claim of each class member may also be adjudicated in the Federal District courts. To find impermissible obviously more efficient and effective means of adjudicating these claims over which both the Court of Claims and the District Courts clearly have jurisdiction would be unfortunate to say the least.

### IV

■ One legitimate objection to the proposed class definition which has not been raised by the government is that federal district courts do not have Tucker Act jurisdiction over claims against the United States which are greater

2. It may be noted in passing that one of the decisions which the government has refused to accept and follow was handed

down by the Court of Claims. *See* Schmid v. United States, *supra.*

than $10,000. See 28 U.S.C. § 1346(a)(2). All claims against the United States which exceed $10,000 must be brought in the Court of Claims. *See* 28 U.S.C. § 1491. Accordingly, the proposed class definition will have to limit the class to those persons who would otherwise qualify as class members and whose projected benefits under 10 U.S.C. § 687(a) would not exceed $10,000.

Counsel for the plaintiffs have informed us that the number of claims which would exceed $10,000 are minimal in an absolute sense and miniscule relative to the number of claims which are under $10,000. He points out that very few higher ranking officers served less than five years. Consequently, little benefit would come from transferring the entire action to the Court of Claims. Those relatively few with claims over $10,000 can bring their actions individually or pursue an action in the nature of a class action which is currently available in the Court of Claims. *See*, Quinault Allottee Assoc. v. United States, *supra.*

## OBJECTIONS TO INTERROGATORY

■ The interrogatory to which the government objects requests "the name and last known address of every member" of the plaintiff class. In support of the objection, it is alleged that the number of reserve officers separated from the Armed Services during the period covered in the class definition (September 24, 1966 to date) is approximately 311,760, and that the number of enlisted personnel separated during that same period is over one million. The government now alleges that the manual examination of these files to determine the makeup of the proposed class would take approximately eight months and cost approximately one million dollars.[1]

The government raised this same burden as an objection to the designation of this suit as a class action. The same analysis which led us to reject these points above is applicable here. Furthermore, if this lawsuit is to proceed as a class action as it has been designated above in this opinion, the determination of the names and addresses of the actual members of the class must be made within a reasonable time so that the notice requirements of Rule 23, Fed.R.Civ. P., can be fulfilled. Consequently, within a short time the government must provide plaintiffs' counsel with the names and addresses of the designated class members, whom it should be kept in mind, are those members of the proposed class who have projected claims under $10,000. However, the purpose of the interrogatory (to identify the class members) may be achieved in some other way. As suggested in open court by counsel for the plaintiff, perhaps a less expensive and time consuming alternative may be found.[2] If a less expensive and cumbersome alternative can be found and agreed upon by the parties, the government need not answer the interrogatory. However, the objection to the interrogatory is denied.

## CONCLUSION

The government has failed to raise any legitimate objection to the designation of this suit as a class action. It is evident that a class action is the most efficient manner in which to proceed with what could be a staggering number of individual suits. A class action also

---

1. As discussed earlier in this opinion, the government, in its affidavit in opposition to designation as a class action, originally estimated that the required screening would take fourteen months and cost $1.5 million. It is clear from this discrepancy and otherwise understandable that the government estimates are speculative.

2. Counsel has suggested, for example, that notice might be sent to each of the former officers and enlisted men separated from service during the period in question with a questionnaire, the information from which would establish the identity of the class members.

would be the most efficient manner for the government to defend against these claims and to resolve, once and for all, the basic question involved in all of them.

The only possible basis for opposing the class designation is the potential size of the class and the mechanical problems involved in identifying and sending notices to the currently largely unwitting class members. This problem is, of course, inherent in any class action involving a large number of class members. It does not follow, however, that a binding adjudication of the rights of a large number of persons is to be denied merely because their numbers will present mechanical problems. Rule 23 was amended to deal with just such situations since the alternatives are either a multitude of individual suits or the forfeiture of their rights by a large number of individuals or both.

An appropriate order will enter striking the government's objection to plaintiff's interrogatory which requests the name and addresses of the proposed class members and declaring this action a class action in accordance with Rule 23, Fed.R.Civ.P., with the class defined to include the following:

> Any person who was a member of the various reserve components of the Armed Forces or a member of the Army and Air Force without component who 1) at any time after September 24, 1966 to date, was released from active duty because he or she was not accepted for an extension of active duty for which he or she volunteered after he or she had completed a tour of active duty, 2) who had completed, immediately before his or her release, more than four (4) years and six (6) months of continuous active duty but less than five (5) years either as a commissioned officer, warrant officer or enlisted member, and 3) whose projected benefits under 10 U.S.C. § 687(a) do not exceed $10,000.