[No. 23001.   Department One.   March 9, 1931.]

THE CITY OF TACOMA, *Respondent*, v. WM. D. PERKINS
*et al., Appellants*, H. W. LUEDERS *et al.,*
*Defendants.*[1]

[1]Reported in 296 Pac. 829.

*Preston, Thorgrimson & Turner,* for appellants.

*W. W. Mount, John E. Gallagher,* and *Bartlett Rummel,* for respondent.

MAIN, J.—This is a proceeding in the nature of a receivership, brought by the city of Tacoma to wind up the affairs of local improvement district No. 347 in that city under the provisions of chapter 142, Laws of 1929.

In December, 1910, the city duly established local improvement district No. 347 for the construction of a local improvement therein, which was to be paid for by special assessments against the property benefited. December 14, 1910, the city issued bonds of the district, numbered from 1 to 1260, inclusive. Wm. D. Perkins, doing business as Wm. D. Perkins & Co., Bankers, First National Bank of Minneapolis, a corporation, and H. W. Moses, together with other bondholders, were made parties to this action. The parties named are owners of bonds Nos. 750 to 886, inclusive. All the bonds of the district matured and were payable December 14, 1920. The interest on all the bonds evidenced by the coupons thereon was paid, and the bonds numbered 1 to 749, inclusive, were retired by paying the principal.

Prior to the time this action was begun, the city, through foreclosure of delinquent local improvement assessments, had acquired title to ten tracts of land within district No. 347. At the time the action was instituted, there was in the possession of the city the sum of $9,137.59, which had been paid on account of assessments in the district. By this action the city sought, as already indicated, to wind up the affairs of the district, and disburse all its assets.

By two orders, one dated April 19, 1930, and the other May 8, 1930, the court directed the city to re-

imburse itself out of the fund mentioned for general taxes previously paid on two of the tracts, and to pay the taxes on the other eight tracts held by the city. Pursuant to these orders, there was paid out of the $9,137.59 fund above mentioned the sum of $1,816.17. The orders were entered without notice to the parties above mentioned, who, as soon as they learned that the same had been made, applied to the court to set the orders aside, which application was supported by affidavit. The court, October 7, 1930, entered an order denying the application to set aside the previous orders, and from this order Wm. D. Perkins, doing business as Wm. D. Perkins & Co., Bankers, First National Bank of Minneapolis, a corporation, and H. W. Moses, appeal.

■ The first question is whether the city had a right to use, for the payment of general taxes upon the property in the district, title to which it had acquired by foreclosure proceedings, any portion of the $9,137.59 which was in its possession at the time this action was begun.

The bonds in question were issued under the Laws of 1899, ch. 124, p. 234 (Rem. Comp. Stat., § 9515 *et seq.*). Section 1 of the act (Rem. Comp. Stat., § 9515) provides that, whenever any city has power to make a local improvement and levy assessments therefor, the city may provide for the expense of the improvement by bonds of the district. Section 2 (Rem. Comp. Stat., § 9516) provides for the issuance of bonds and the interest thereon, to be paid solely out of the fund provided by the assessment, and not otherwise. Section 4 (Rem. Comp. Stat., § 9518) provides that, where the bonds are issued to pay the cost and expense of a local improvement, the cost and expense shall be assessed against the lots or parcels of land which under the law and the charter of the city shall be liable

therefor. Section 5 (Rem. Comp. Stat., § 9519) in part provides that, in all cases where any assessment or any installment thereof is paid as provided in the act, the same shall be paid to the city treasurer, and all sums so paid

". . . shall be applied solely to the payment of the cost and expense of such improvements or the redemption of the bonds issued therefor."

That law, being in effect at the time the bonds in question were issued, entered into and became a part of the bondholder's contract. *State ex rel. Polson v. Hardcastle,* 68 Wash. 548, 124 Pac. 110; *State ex rel. Moses v. Walters,* 156 Wash. 664, 287 Pac. 874.

When assessments were paid to the city treasurer, under § 5, above referred to, the sums so paid could be applied only to the cost and expense of the improvements, or the redemption of bonds issued therefor. Applying that statute to the present situation, the city held the $9,137.59 above mentioned in trust for the bondholders, and it had no right to divert any portion thereof to any other purpose.

It is said, however, that its right to make the diversion was authorized by chapter 142, Laws of 1929, p. 362, under which this proceeding was brought. That act provides that whenever any city or town has acquired or may hereafter acquire any property through foreclosure of delinquent local improvement assessments thereon, and all bonds or warrants outstanding and unpaid in the local improvement district in which such assessments were levied are delinquent, the city may sell such property, and the other assets of the district, for the purpose of liquidating the bonds, and terminate its trust by filing in the superior court of the county in which such city or town is located an action therefor. The act sets out what the complaint shall contain, the manner of notice, and

other matters not necessary here to mention, and contains this provision:

"In any such action the court after acquiring jurisdiction shall proceed as in the case of a receivership (except that such city or town shall serve as trustee in lieu of a receiver) to sell the assets of such district or districts at such prices and in such manner as it may deem advisable and to apply the same to the expenses of such action and the liquidation of such bonds and warrants and to terminate such trust or trusts and to discharge such city or town from further duties thereunder. . . ."

The provision to sell the assets of the district obviously does not apply to assessments paid and which the city held in trust for the bondholders. We find no provision in that statute authorizing the city to divert any part of the $9,137.59 fund to the payment to the county of general taxes upon property which the city had acquired by foreclosure. Were the act given a different construction, it would present a constitutional question upon which we here express no opinion.

It is said that the remedy of the appellant was by filing a claim with the city, and not the vacation of the orders mentioned. Even though the appellants may have had the right to file a claim for a wrongful diversion by the city of a portion of the fund, it does not follow that they have not also the right to have the orders directing the diversion of a portion of the fund vacated.

Respondent opened its brief with a motion to dismiss the appeal because notice of the appeal was served only upon the city as receiver, and not upon all the parties to the action. Under the holding in the case of *Barlow & Sons v. H. & B. Lumber Co.*, 153 Wash. 565, 280 Pac. 88, the motion to dismiss the appeal should be denied.

The judgment will be reversed, and the cause re-

214

manded with instructions to the superior court to vacate the two orders complained of.

TOLMAN, C. J., PARKER, MITCHELL, and HOLCOMB, JJ., concur.

[1]Reported in 296 Pac. 811.