[No. 28776. Department Two. November 25, 1942.]

J. J. LYNN et al., Respondents, v. THE CITY OF LONGVIEW, Appellant.[1]

[1]Reported in 131 P. (2d) 164.

*J. C. McCoy,* for appellant.

*Preston, Thorgrimson, Turner, Horowitz & Stephan,* for respondents.

DRIVER, J.—This is an appeal by defendant city of Longview from an interlocutory order granting plaintiffs an accounting in an action tried to the court. The pertinent facts, stipulated in part and otherwise not substantially in dispute, are fully and clearly stated in the trial court's comprehensive, well-reasoned memorandum opinion as follows:

"In the years 1925, 1926 and 1927, the defendant city created twenty different local improvement districts. They were numbered from one to twenty inclusive. Bond issues were made by each particular local improvement district to pay for such improvements. Bonds issued by districts numbered nine, sixteen and twenty, have all been paid and retired. In each of the other districts there are many bonds still outstanding. The great majority of these bonds is owned by the plaintiffs. The plaintiffs own the outstanding bonds first in order of payment in each district, excepting in district No. 1, in which they own the second bond in order of payment.

"The due dates on these outstanding bonds are from 1937 to 1939 inclusive. They are all past due. As required by law, at the time of the creation of the respective improvement districts and the bond issue therefor, assessments were levied and apportioned

against the real property therein for the purpose of paying the bond issue. These assessments were payable annually. From time to time these annual assessment payments were made to the city and deposited by the city treasurer together with some other city funds in two banks in Longview. These deposits earned interest to the approximate amount of twenty thousand dollars, plus. The respective assessment payments were ultimately applied to the retirement of bonds, pursuant to the law. But this earned interest was and is retained by the city. This interest fund is the fund in suit in this case.

"It is admitted there are not sufficient assets remaining in the respective improvement districts to pay the respective outstanding bond issues. By the word 'assets,' is meant all assessments still payable but unpaid, including this interest fund, as it has been designated.. All assessments in the respective districts are delinquent. There are now no assessment payments in the respective 'local improvement funds.' There are no funds in the control of the city other than this interest fund.

"Now for a more detailed statement as to the accumulation of this interest fund.. The city through its proper officers collected various assessments in each of said improvement districts between May 31, 1925, and September 30, 1937. These moneys realized from the payment of these assessments, plus some miscellaneous funds of the city, were deposited with the Lumberman's Bank and Trust Company of Longview between May 31, 1925, and July 31, 1929, and with the First National Bank of Longview between May 31, 1925, and September 30, 1937. These deposits were general deposits; that is, the bank account was merely in the name of the city. It had no particular fund designation on the books of the bank. The respective banks from time to time paid interest on these deposits. This interest earning paid by the banks amounted to approximately sixteen thousand dollars. From time to time between May 31, 1925, and October 31, 1929, the city invested and reinvested some of this interest fund. This investment and reinvestment earned some four thousand dollars plus. The earnings from this in-

vestment and reinvestment plus interest payments made by the bank, totalled twenty thousand dollars plus. This interest and investment earning were kept on bank deposit by the city in the same account with other funds deposited in the bank and put to its credit. There were no particular or separate bank accounts.

"In its own books of account the city opened and kept a separate book account of its several separate funds. As each local improvement district assessments were paid in, the city in its books opened and kept separate accounts for each district. These accounts respectively, as required by law, were designated, 'local improvement fund district No. ——,' and this fund account was debited with all assessments collected in the respective improvement districts and credited with all payments on bonds made therefrom.

"The city also opened in its books an account which it designated 'revolving fund.' In this account it entered these interest earnings, etc. There is no statute requiring the city to establish or open such a fund as 'revolving fund,' and the city has passed no ordinance requiring such an account to be opened in its books. This so-called 'revolving fund' is merely a name used by the city on its books and is designated merely to keep track of its interest earnings. This 'revolving fund' shows interest earnings in the sum above indicated of twenty thousand dollars plus.

"Prior to 1937 the city disbursed from this revolving fund account some $2500 to various city general funds and some $1250 to different local improvement district funds.

"Apparently on September 28, 1939, the city had left in this revolving fund account something over $16,600. On this last date, the city transferred all this sum to other city funds. It did not transfer any of it to the respective local improvement district fund accounts. It is admitted that of the $16,600, over 85 per cent constitutes interest and investment earnings on the bank deposits, or local improvement district assessments paid into the city.

"The plaintiffs by their action ask that the city

"1. Account for all interest earned by assessment funds, and investment and reinvestment of such funds;

"2. That such accounting determine the proportionate amount of said interest fund found to be due or earned by each respective local improvement fund;

"3. That the city pay into each respective local improvement district fund such proportionate amount with interest at six per cent, and that said sums be used for the sole purpose of paying and redeeming interest and principal on bonds of said local improvement districts."

██ ██ Under the statutes governing the making of local improvements by municipalities, which provide, in effect, that assessments shall be kept in special funds for the sole purpose of paying principal and interest of local improvement district bonds, this court has held that the local improvement district assessments collected by the municipality constitute a trust fund for the benefit of the holders of the bonds. *Tacoma v. Perkins,* 161 Wash. 209, 296 Pac. 829. See, also, *Commercial Waterway Dist. v. King County,* 10 Wn. (2d) 474, 117 P. (2d) 189.

Applying this principle, *Smith v. Boise City,* 18 F. Supp. 385, 388, a case involving a local improvement act quite similar to our own, the United States district court, district of Idaho, stated:

"These assessments are private property and belong to the owners of the bonds and not to the city, that being the case the city becomes the statutory trustee under the bond issue with the duty to account for the assessment after it, by its officers, had collected the same, as the statute empowered it to collect the assessment and when that is done its duty as imposed upon it by the statute was to apply them to the special fund to be used in the payment of the bonds. . . ."

The following additional cases from other jurisdictions also are in accord: *New Orleans v. Warner,* 175 U. S. 120, 44 L. Ed. 96, 20 S. Ct. 44; *Federal Deposit Ins. Corp. v. Casady,* 106 F. (2d) 784; *Cook v. Staunton,* 295 Ill. App. 111, 14 N. E. (2d) 696; *Viehweg v. Mount*

*Olive,* 298 Ill. App. 412, 19 N. E. (2d) 211; *Allbee v. Aurora,* 306 Ill. App. 457, 28 N. E. (2d) 742; *Carbon Hill v. Merchants Bank & Trust Co.,* 237 Ala. 55, 185 So. 387; *Wheeler v. Blackfoot,* 55 Idaho 599, 45 P. (2d) 298; *Cruzen v. Boise,* 58 Idaho 406, 74 P. (2d) 1037.

Since the assessments collected in each local improvement district constitute a trust fund held by the city, as trustee for the benefit of the bondholders of that district, it seems to us, logically, to follow that the interest earned on such assessments is also impressed with a like trust. All increase in the value of a trust fund derived from investment or reinvestment returns or from interest earned on the fund, belongs to, and becomes a part of, the corpus of the trust estate in the absence of some specification to the contrary in the instrument or the statute creating the trust. 65 C. J. 824, § 707, p. 857, § 735 (see, also, Restatement of the Law of Trusts, p. 566, § 207 (1), and comments thereon); *Jewell v. Superior,* 135 Fed. 19; *United States v. Mosby,* 133 U. S. 273, 286, 33 L. Ed. 625, 10 S. Ct. 327; *State v. McFetridge,* 84 Wis. 473, 54 N. W. 1, 20 L. R. A. 223; *Rhea v. Brewster,* 130 Iowa 729, 107 N. W. 940; *Eshelby v. Board of Education,* 66 Ohio St. 71, 63 N. E. 586; *Adams v. Williams,* 97 Miss. 113, 52 So. 865, 30 L. R. A. (N. S.) 855, Ann. Cas. 1912C, 1129.

In *Rhea v. Brewster, supra,* money had been left with the clerk of the court by a litigant. The clerk deposited the money in a bank at interest and later claimed the interest as his own. Rejecting his claim, the court said:

"The true test, as it seems to us, is not whether he [the clerk] is absolutely liable to account, but whether he is the owner of the funds in his hands. If he is not such owner and the moneys coming into his hands belong to the county or some one else, any increment thereto is and should be treated as a part of the principal. This is the view approved in the better con-

sidered cases, and the only one consonant with sound public policy."

Appellant's counsel calls our attention to Rem. Rev. Stat., § 9405 [P. C. § 1040], which reads as follows:

"Neither the holder nor owner of any bond issued under the authority of this act shall have any claim therefor against the city by which the same is issued, except from the special assessment made for the improvement for which such bond was issued, but his remedy in case of nonpayment, shall be confined to the enforcement of such assessments. A copy of this section shall be plainly written, printed or engraved on each bond so issued."

He maintains that this statute indicates a legislative intent that the bonds were to be paid, to the exclusion of the interest, from the assessments only. We do not believe it will reasonably bear that construction. It provides merely that the bonds shall not be general obligations of the city, and that the holders thereof must look exclusively to the funds made up of payments of the local improvement district assessments. But, as we have pointed out, the assessments constitute a trust, and the interest, in contemplation of law, attaches to, and becomes a part of, the corpus of the trust.

Appellant also earnestly urges that *State ex rel. Booth v. Tatro,* 199 Wash. 421, 92 P. (2d) 206, which is based upon the earlier case of *State ex rel. National Bank of Tacoma v. Tacoma,* 97 Wash. 190, 166 Pac. 66, is in point and controls the present controversy.

The *Tacoma* case involved the power of the city to create a local improvement district surplus fund, made up from the moneys remaining in the funds of local improvement districts after all the bonds thereof had been paid, from which surplus fund the city was to pay defaulted local improvement bonds of other districts.

Much the same situation was presented in the *Booth* case. There, the city council of Olympia attempted to provide for the payment of defaulted local improvement district bonds from a revolving fund, which the council had created, made up of savings and interest derived from the assessment funds of the various local improvement districts of the city.

In each case, this court held that the money in the special surplus or revolving fund created by the city could not be used to redeem defaulted bonds, for the reason that the governing statutes, in effect, limit the payment of any bond to the assessments levied upon the property in the particular district against which the bond has been issued.. The distinguishing point in the instant case is that, here, respondents seek to require appellant city to pay back into each improvement district fund only the amount of interest earned on the assessments of that particular district. In this case, if the decision of the trial court prevails, no bond can be redeemed by interest earned on the assessments in *other districts,* but only by the interest earned on assessments in *its own district.*

Appellant further contends that respondents did not file their claim against the city within the time limited by law. As stated, the diversions of the moneys involved in the instant case to the general funds of appellant city were made on September 28 and October 31, 1939. Respondents' claim was filed with the city clerk on October 25, 1939, within thirty days after the first diversion. Such filing was timely. Where a trustee repudiates the trust and claims to hold the estate as his own, and such repudiation and claim are brought home to the *cestui que trust* in such manner that he is called upon to assert his rights, the statute of limitations will commence to run against him from the time such knowledge is brought home to him and not be-

fore. *Keyes v. Tacoma,* 12 Wn. (2d) 54, and cases therein cited on pages 56, 57; 120 P. (2d) 533, 535.

We have considered the other contentions made by appellant, but have concluded that they are devoid of substantial merit.

The interlocutory order appealed from is affirmed.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.

