Henry FOX and Lillian Fox, and all others similarly situated, Plaintiffs,

v.

The CITY OF CHICAGO, and the Department of Urban Renewal of the City of Chicago, Defendants and Third-Party Plaintiffs,

v.

UNITED STATES of America and James F. Lynn, Secretary of the Department of Housing and Urban Development, Third-Party Defendants.

No. 74 C 1269.

United States District Court, N. D. Illinois, E. D. 

Oct. 14, 1975.

Bradley, Bradley, Lyon & Nedderman, Chicago, Ill. (Edward J. Bradley and Thomas C. Bradley), Chicago, Ill., for plaintiffs.

William R. Quinlan, Corp. Counsel, Chicago, Ill., for defendants and third-party plaintiffs.

James R. Thompson, U. S. Atty, N. D. Ill., for third-party defendants.

## MEMORANDUM OPINION and ORDER

LYNCH, District Judge.

This action was originally commenced in the Circuit Court of Cook County against the City of Chicago and the City's Department of Urban Renewal by the named plaintiffs individually and as representatives of a class of persons who, allegedly, were similarly situated.

The factual background of the suit is as follows. The plaintiffs borrowed funds for the purpose of rehabilitating residential property pursuant to a program established under the authority of Section 312 of Title III of the Housing Act as amended (42 U.S.C., Section 1452b). Under the pertinent section, the Secretary of Housing and Urban Development is authorized, through the utilization of local public agencies, to make loans to eligible owners and tenants of real property to finance the rehabilitation of housing in certain specified areas. The local public agency has the responsibility of administering the plan. The rehabilitation loans currently bear an interest rate of 3% per annum.

After the City of Chicago's Department of Urban Renewal (hereinafter DUR) receives an approval loan application, it requests a check for the amount of the loan. The regional office of the Department of Housing and Urban Development (hereinafter HUD) sends to the DUR a loan check payable to the borrower  The DUR secures the borrower's endorsement on the check at the loan closing. The DUR then obtains a note from the borrower. The check is then deposited in a rehabilitation escrow account. Periodic payments are made from the escrow account to the contractor performing the rehabilitation work as the project is satisfactorily completed. Payments out of the escrow account to the contractor require the endorsement of both the borrower and DUR. Any funds not used in the escrow account must be applied to the principal amount of the loan.

HUD has promulgated regulations for the administration of this program but said regulations do not specifically provide that the funds held in escrow be placed in an interest bearing account. The regulations do not indicate how any interest which may be derived from these escrow accounts should be used. Two-thirds of the cost of the subject program are to be borne by HUD and one-third by the local public agency.

The plaintiffs alleged in their complaint in the Circuit Court that the City and DUR have received loan funds from the plaintiffs and their purported class and that the funds deposited in the escrow account make up the rest of a resulting trust. The plaintiffs allege that under the above scheme the City and DUR are subject to a fiduciary responsibility to the plaintiffs and are required to segregate these funds. The complaint alleges that the City and DUR have failed in this respect by commingling these trust funds with the City's general funds. The City is said to have appropriated the earnings from these deposits for its own use, directly in contravention of their duties under the trust. The plaintiffs seek an accounting for the earnings which were derived from the deposit of the loan funds and pray that said earnings be turned over to a receiver for disbursement to the plaintiffs and the class they seek to represent.

The City of Chicago filed a third-party complaint in the Circuit Court of Cook County against the United States and the Secretary of HUD. In its complaint, the City alleged that it administered the loan funds pursuant to HUD regulations. The City further alleged that any interest received by it from the investment of these funds was credited to the project account, thereby reducing the project costs. This was said to inure to the benefit of HUD in that HUD would have otherwise had to bear the responsibility of absorbing two-thirds of those costs. The City alleged that it would be entitled to recover from the United States and the Secretary of HUD funds which the plaintiffs might receive if they prevailed in their suit against the City.

The United States then filed a petition for removal of the action pending in the Circuit Court of Cook County pursuant to 28 U.S.C., Section 1442(a)(1) in that an officer of the United States was joined as a party defendant to said cause. The petition was granted and the case was removed to this Court.

Several motions have been submitted to this Court by the parties involved. The outcome of each of these motions appears to be contingent upon the outcome of another. Therefore, the Court will strive to treat the motions in their logical sequence.

I

The United States of America has filed a motion to dismiss the third-party complaint, pursuant to Rule 8(a)(1) of the Federal Rules of Civil Procedure, alleging that the City and DUR had failed to include in their third-party complaint a sufficient jurisdictional allegation. In an attempt to head off this attack, the City has filed a second amended third-party complaint in which it attempts to establish jurisdiction for its complaint through 42 U.S.C., Section 1452b(e) and 28 U.S.C., Section 1346.

Section 1452b(e) of Title 42 establishes, through incorporation by reference to 12 U.S.C., Section 1749a, that the Secretary of HUD may sue or be sued with respect to the performance of his duties.

Section 1346 of Title 28, the Tucker Act, gives the district courts original jurisdiction of any civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, any Act of Congress, any regulation of an executive department, or any express or implied contract with the United States.

█ Title 42 U.S.C., Section 1452b(e) does not establish jurisdiction but merely indicates that the Secretary of HUD is capable of being sued. Consequently, it appears that the only jurisdictional basis asserted by the third-party plaintiff is the Tucker Act. As has already been stated, jurisdiction under the Tucker Act is limited to claims not exceeding $10,000 in amount.

■ The affidavit filed by the City of Chicago in support of its second amended third-party complaint indicates that the City has a separate federal contract with the United States for each particular rehabilitation project. (Paragraph 7 of the affidavit). The affidavit also indicates that the contract for each project contains a formula which sets out what portion of the project costs is to be assumed by the United States and what portion is to be assumed by the City of Chicago. The Federal government's contribution to any project's costs is said to be at least two-thirds of the net project cost, depending on the particular contract. (Paragraphs 10 and 11 of the affidavit). From the above it can be seen that the claims asserted by the City against the third-party defendants are based upon contracts with the United States. Therefore, one aspect of the Tucker Act jurisdictional grant has been met. The other aspect relates to the dollar amount involved in the controversy.

Jurisdiction under the Tucker Act is limited to claims of $10,000.00 or less. Because the amount recoverable from the third-party defendants would hinge on the amount recoverable from the third-party plaintiff by the plaintiffs, reference to the amount in controversy between plaintiffs and third-party plaintiffs is necessary to determine the amount in controversy on the third-party complaint.

■ Plaintiffs have brought this action in the form of a class action. Recent decisions have uniformly held that jurisdiction under the Tucker Act depends not upon the aggregate amount of the claims of the members of the class, but upon the amounts claimed individually by those members. *O'Meara v. United States*, 59 F.R.D. 560 (N.D. Ill.1973); *March v. United States*, 165 U.S.App.D.C. 267, 506 F.2d 1306 (1974). The claims of the individual plaintiffs making up the plaintiff class appear to be far below $10,000.00 per class member considering the nature of their claims. As a result, the amount in controversy on the third-party complaint, when broken down to each of the contracts in question, is within the jurisdictional limitations of the Tucker Act. Furthermore, the third-party plaintiffs' persistence in asserting jurisdiction in this Court under the Tucker Act can be construed as a waiver by the third-party plaintiffs of any claim against third-party defendants which might possibly exceed $10,000.00. Such a procedure has been held valid in *Perry v. United States*, 308 F.Supp. 245 (D.Colo.1970) and *Wolak v. United States*, 366 F.Supp. 1106 (D.Conn.1973).

In accordance with the above analysis, this Court finds that it has jurisdiction of the instant cause under the Tucker Act and the third-party defendants' motion to dismiss the third-party complaint is hereby denied.

The defendant, third-party plaintiffs have filed a motion to strike the designation of this cause as a class action. The Court deems it unnecessary to deal with this motion considering the legal conclusions reached by the Court in the immediately following section of this opinion.

## II

■ The third-party defendants have filed a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The defendants, City of Chicago and DUR, have joined in this motion with the third-party defendants. The memoranda filed by the respective parties indicate that there are no genuine issues of material fact outstanding. Therefore, the Court proceeds to the issue of law presented by this controversy.

The main thrust of the motion for summary judgment is that the deposit of the loan funds in an escrow account which earns interest is not, under the circumstances of this case, tantamount to the creation of a resulting trust. Third-party defendants advance this argument on the basis that plaintiffs never

acquired any specific property rights in the rehabilitation loan fund and, as such, cannot be considered the beneficiaries of an alleged trust when they have no specific rights to the funds which allegedly make up the res of the trust.

The claim that plaintiffs had no specific property rights in any of the loan proceeds is based on the observation that plaintiffs had no right to any of the loan funds that were not depleted as a result of the refurbishment work. Any loan funds not used for specific construction projects are credited to the outstanding balance of the loan and not returned to the borrower.

The United States has cited the decision in *Sears v. First Federal Savings & Loan Association of Chicago*, 1 Ill.App. 3rd 621, 275 N.E.2d 300 (1971) in support of its theory. The *Sears* case involved a tax escrow account consisting of funds generated by monthly advance payments, under the terms of mortgage notes, which were applied to the payment of taxes, assessments and insurance premiums. The mortgage borrower who made payments into this account sought an accounting for earnings and profits resulting from the funds created by the payments. The Illinois Appellate Court ruled that no resulting trust was created under the above circumstances but only a general deposit for a specific purpose. The Court held that:

> " . . . these monthly payments were made by plaintiff and other borrowers virtually without recourse beyond their right to pro-tanto payment of taxes and insurance. When the payments were made, the borrowers retained no specific property rights in any of the sums thus paid. They retain no right to refund of any portion of any payments. The payment was unconditional except for a contracted right vested in the borrower to have the taxes and insurance paid to the extent of the monthly payments. Plaintiff had no property rights beyond this in any payment after it was made . . ." 275 N.E.2d at 306.

The plaintiffs, in opposing the motion for summary judgment, have asserted that the City was, in fact, acting in a fiduciary capacity when the loan funds were entrusted to it. It is urged that a fiduciary cannot profit from funds placed in its custody and control. This assertion is based upon the equity concept of unjust enrichment. Plaintiffs assert that by failing to turn over to them the interest earned on the escrow accounts in question, the City has unjustly enriched itself at their expense.

Of course, no one can quarrel with the well established principles advanced by plaintiffs which relate to the duties involved in a fiduciary relationship and to the equitable principle which forbids the accrual of unjust enrichment to a fiduciary. The critical question here, however, is whether, in fact, a resulting trust was created which would give rise to such a fiduciary relationship.

In an attempt to establish that a resulting trust was created, plaintiffs cite several cases involving funds which were maintained by municipalities after the payment of assessments to the municipalities for local improvements. Rather than using the funds to redeem the bonds which the municipalities had issued, the funds were invested in Treasury Bills and Certificates of Deposit. The municipalities would then retain the profits generated by the investments purchased with the funds. Under these circumstances, it was held that the municipalities must account to the bondholders for all of the profits which were generated. *Willard v. City and County of Honolulu*, 323 F.Supp. 666 (D.Haw.1971); *Lynn v. City of Longview*, 15 Wash.2d 528, 131 P.2d 164.

The situation presented in those cases is clearly distinguishable from the instant case. The most obvious distinction is that the plaintiffs in the former cases had deposited funds with a governmental agency but with the strict purpose in mind of having those funds returned to them at a future date along with a return on their investment. The

bondholders could be considered the true "owners" of the funds that the government bodies had collected to pay the bonds off. In the instant case, the plaintiffs entered into an arrangement where the benefit they sought was the rehabilitation of their homes and not a monetary return on an investment such as interest earned on a bond. Furthermore, plaintiffs in the case at bar could never hope to receive any of the loan funds back because any excess funds were to be applied to the principal of the loan.

It appears to the Court that this case presents a somewhat unique situation. As such, the Court deems it proper to refer to the rationale for generating the loan funds in order to gain a perspective. The underlying program was designed by Congress to assist in the rehabilitation of residential housing. The program offered the plaintiffs the advantage of an interest rate far below the market rate on similar loans if they had been obtained in an orthodox financial transaction. The plaintiffs were not charged a service fee on the loan. Last, but not least, the plaintiffs were able to refurbish their home when they may not have been able to do so if it were not for the subject program.

If the borrowers were to receive interest on the rehabilitation loan escrow accounts at a currently accepted rate of interest, they would be earning a higher rate of interest on the funds than the rate charged for the use of the funds. Congress most certainly never intended the subject program to give rise to such a situation. The interest generated by the deposits served only to defray the cost of a program which was created with the idea of aiding the plaintiffs, and others like them, improve the conditions of their habitats. The reduction of costs most certainly helped sustain this program so that others might be aided in the same fashion as the plaintiffs were aided.

The Court finds that all the circumstances of this case lead to the conclu-sion that the deposit of the loan funds did not lead to the creation of a resulting trust and that there has been no unjust enrichment at the plaintiff's expense. Both the law and the equities of the situation dictate this finding.

Accordingly, the Court hereby grants summary judgment in favor of the defendant, third-party plaintiffs and the third-party defendants.