Alicia **VAZQUEZ**, Orestes Morcelo, and their conjugal partnership, Plaintiffs,

v.

Jack **KEMP**, in his official capacity as Secretary of the United States Department of Housing and Urban Development, and the Municipality of San Juan, Defendants.

Civ. No. 89–1691 (JAF).

United States District Court,
D. Puerto Rico.

May 9, 1991.

Charles S. Hey–Maestre, San Juan, P.R., for plaintiffs.

Miriam Soto–Contreras, Lasa Escalera & Reichard, San Juan, P.R., for Municipality of San Juan.

Rebeca O. Hidalgo, Trial Atty., Torts Branch, Civ. Div., Dept. of Justice, Washington, D.C., R. Joseph Sher, Sr. Trial Counsel, Torts Branch, Civ. Div., and Asst. U.S. Atty. Isabel Muñoz–Acosta, San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs Alicia Vazquez, Orestes Morcelo, and the conjugal partnership formed by them, commenced this action against defendants Jack Kemp, in his official capacity as the Secretary of the United States Department of Housing and Urban Development ("HUD"), and against the Municipality of San Juan, Puerto Rico. Plaintiffs allege that due to defendants' negligence in processing their applications under the Section 312 Rehabilitation Loan Program, as amended, 42 U.S.C. § 1452b,[1] they have been denied funds to which they were entitled. Further, plaintiffs have alleged that defendants' actions have deprived them of their fifth and fourteenth amendment rights to due process and equal protection and have brought suit pursuant to 42 U.S.C. §§ 1983, 1988. For these claims, plaintiffs allege that this court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and (4). Plaintiffs also invoke

---

1. Section 312 refers to the original section number found in the Housing Act of 1964, Pub.L. 88–560, Title III, § 312, 78 Stat. 790. For purposes of this decision the rehabilitation loan program will be referred to generally as the Section 312 loan program. However, when the statutory section is used, reference will be made to the Code section, § 1452b.

the pendent jurisdiction of this court and raise state law claims.

Before the court are defendants' motions to dismiss. Because we find that the doctrine of sovereign immunity applies as to defendant Kemp, this court lacks subject matter jurisdiction and must therefore dismiss the action as to this defendant. Further, because we find that there is no private right of action under section 1452b nor a property interest sufficient to state a claim under section 1983, we dismiss plaintiffs' federal causes of action as to the defendant Municipality of San Juan pursuant to Fed.R.Civ.P. 12(b). Because we decline to exercise pendent jurisdiction over the state law claims, the complaint is dismissed.

## I.

### The Facts

Plaintiffs submitted their application for the Section 312 rehabilitation loan program on July 29, 1987 to the Municipality of San Juan's Office of Housing and Community Development ("OHCD") which acts as the local Section 312 program administrator. Their application sought a $67,000 loan to rehabilitate a residential structure located at Luna St. No. 365, Old San Juan, Puerto Rico. Plaintiffs allege that they complied with all of the substantive and procedural requirements of the Section 312 loan program.

As part of the loan application process, plaintiffs were required to deposit $22,000 in a bank account in order to cover unforeseen costs and to purchase several insurance policies with premium costs totaling over $2,000.

On December 17, 1987, plaintiffs received notice from OHCD that their application was "feasible" and was going to be recommended to HUD for approval. Then, on June 3, 1988, OHCD requested that plaintiffs' application be returned from HUD on the grounds that the local agency objected to the contractor chosen by plaintiff for the project.[2] Plaintiffs were re-

quired to and succeeded in obtaining a different contractor and resubmitted their application on or about September 16, 1988.

After requesting from HUD information as to the status of their application, plaintiffs received a letter dated March 14, 1989 explaining that their application was "ready for approval subject to the allocation of funds." (Docket Document No. 1, *Complaint* at ¶ 20). The letter went on to explain that there were no funds available at this time.

Plaintiffs commenced this action on December 26, 1989. In substance they allege that defendants' delays in processing their application from July 1987 to September 30, 1988 were caused by defendants' negligence. This negligence, in turn, denied plaintiffs access to the Section 312 funds which were not available after September 30, 1988. They further allege that these delays violated their federal statutory and constitutional rights. Plaintiffs also allege that defendant Kemp should now be equitably estopped from denying plaintiffs the loan funds based on the negligence of the officials at HUD.

Both defendants have submitted motions to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Defendant Kemp bases his motion on three grounds. First he argues that plaintiffs have failed to properly serve him pursuant to Fed.R.Civ.P. 4(d)(4) and (5) because no proof was submitted that a copy of the summons and complaint was mailed to the Attorney General of the United States as required by the above-mentioned rules. Second, he argues that this suit is barred by the doctrine of sovereign immunity. Finally, defendant Kemp argues that plaintiffs have failed to state a federal statutory or constitutional claim in that: (a) section 1452b raises no private right of action, and (b) plaintiffs have failed to allege a deprivation of a cognizable property interest which would trigger due process protection.

In plaintiffs' *Motion in Opposition to Dismissal* (Docket Document No. 22), they appended two United States postal return

---

**2.** Plaintiffs provide no rationale for OHCD's request other than alleging that the original con-

tractor was chosen from the list of suggested contractors provided by defendant OHCD.

receipts showing that one article (presumably the summons and complaint) was mailed to the Secretary of HUD *through* the Attorney General and a second mailed directly to Jack Kemp. Even though they had different addresses, they were both stamped as being received by the HUD office in Washington, D.C.

Defendant Municipality of San Juan, in their motion to dismiss, adopted defendant Kemp's federal and statutory arguments as to why plaintiffs' federal claims should be dismissed. They also appended to their motion a letter, dated May 31, 1990, announcing that Section 312 funds have again become available and requesting that plaintiffs reinitiate their application if they are still interested in applying for the loan. (Docket Document No. 27, *Exhibit I*).

## II.

### Discussion
#### A. *Defendant Kemp*

**1. *Service of Process***

■ Because Jack Kemp is an officer of the United States, proper service under Fed.R.Civ.P. 4(d)(5) requires that the United States be served pursuant to Fed.R. Civ.P. 4(d)(4) and a copy of the summons and complaint be sent by registered or certified mail to the officer. Service upon the United States requires that a copy of the summons and complaint be delivered to the United States Attorney, an assistant United States Attorney or a designated clerical employee for the district in which the action is brought. Also a copy of the summons and complaint must be sent by registered or certified mail to the Attorney General of the United States in Washington, D.C. Failure to comply with these rules will result in dismissal of the party for lack of personal jurisdiction. *Sánchez-Mariani v. Ellingwood,* 691 F.2d 592, 594–95 (1st Cir.1982); *Franco-Rivera v. Chairman of Bd. of Directors of Federal Deposit Ins. Corp.,* 690 F.Supp. 118, 122 (D.P.R. 1988).

However, in the case before us plaintiffs did comply with the requirements of Rule 4(d). It is only when the documents intend-

ed for the United States Attorney General were misdelivered to HUD that a problem arose. Even though there were different addresses on the envelopes, the Attorney General's envelope was mistakenly accepted *by HUD.* It is clear that the Attorney General has received actual notice and is before the court defending the claim. It is also clear that it was HUD, a Department of the United States government, who erred by accepting the misdelivered letter. Allowing defendant's own actions to create a jurisdictional bar to prosecution of plaintiffs' claim, where defendants have actual notice and have shown no prejudice, would be unconscionable. Under these circumstances, we ordinarily would allow plaintiffs to cure any defect and complete service on the United States Attorney General and would toll any applicable statute of limitations, accordingly. However, because of our disposition of the case, we find no need for plaintiffs to take further action in this respect.

**2. *Sovereign Immunity***

■ Defendant Kemp next raises the defense of sovereign immunity arguing that since plaintiffs' requested relief, approval of plaintiffs' loan application and the allocation of loan funds, will require disbursement of funds from the federal treasury, the suit, in reality, is one against the United States Government and, as such, is barred by the doctrine of sovereign immunity. In their opposition, plaintiffs make clear that they are not asking for damages. Rather, they seek solely declaratory and injunctive relief.

"The sovereign immunity defense in this case is grounded upon the ancient principle that the United States, as sovereign, is immune from suit, except to the extent that Congress otherwise consents." *United States v. Yonkers Bd. of Educ.,* 594 F.Supp. 466, 468 (S.D.N.Y.1984). *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Sovereign immunity also applies to claims

against federal agencies acting within the scope of their official functions. *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963); *Yonker's Bd.,* 594 F.Supp. at 468. As to federal officers, in *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1052, 10 L.Ed.2d 191 (1963), the Court laid out the following guidelines.

> The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter. E.g., *Dugan v. Rank,* 372 U.S. 609 [83 S.Ct. 999, 10 L.Ed.2d 15] (1963); *Malone v. Bowdoin,* 369 U.S. 643 [82 S.Ct. 980, 8 L.Ed.2d 168] (1962); *Larson v. Domestic & Foreign Corp.,* 337 U.S. 682 [69 S.Ct. 1457, 93 L.Ed. 1628] (1949). Here the order requested would require the Director's official affirmative action, affect the public administration of government agencies and cause as well the disposition of property admittedly belonging to the United States.

*See Burgos v. Milton,* 709 F.2d 1, 2 (1st Cir.1983). The Court, in *Gordon,* therefore concluded that sovereign immunity barred suit.

It is clear from the facts alleged that what plaintiffs seek, their protestations to the contrary, is an order from this court compelling the Secretary of HUD to approve their Section 312 loan application and allocate the necessary funds. As such, plaintiffs' claim falls squarely into the category of "suits in which governmental property rights are challenged" and, as such, "in reality are against the United States and are barred by sovereign immunity." 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3655 at 222 (2d ed. 1985). The only exceptions to this general rule, not applicable here, are when the officer: (1) acted in his individual capacity; (2) acted beyond the scope of his statutory authority; or (3) although within the scope of his authority, acted upon a statute which unconstitutionally conferred power upon the official.[3] *See Kozera v. Spirito,* 723 F.2d 1003, 1007–08 (1st Cir.

1983); Wright, Miller & Cooper, § 3655 at 227–30.

■ However, this does not end our inquiry. As stated above, Congress may waive sovereign immunity and consent to suit against the United States. This waiver "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). Therefore, in order for plaintiffs to maintain suit, they must identify "some applicable congressional waiver of the sovereign immunity defense." *Yonkers Bd. of Educ.,* 594 F.Supp. at 468–69.

Plaintiffs base their waiver argument on the language of section 1452b(e) which gives the Secretary "the functions, powers, and duties set forth in section 1749a of Title 12." Although section 1749a was repealed in 1986, Pub.L. 99–498, 100 Stat. 1545, the parties are in agreement that the Secretary's powers enumerated in section 1749a can now be found in 20 U.S.C. § 1132g–1, including the "sue and be sued" language of section 1132g–1(c)(2). Plaintiffs argue that this language expresses Congress' intent to waive sovereign immunity for suits under section 1452b. We disagree.

First of all, we note that plaintiffs have not cited, nor has our limited research discovered, any case involving the Section 312 loan program where plaintiffs, seeking relief similar to that requested here, have been allowed to maintain an action against HUD or its officers. In *Rousseau v. Philadelphia,* 589 F.Supp. 961, 963 n. 1 (E.D. Pa.1984), the district court dismissed the then Secretary of HUD and the agency itself for lack of subject matter jurisdiction. In *Fox v. Chicago,* 401 F.Supp. 515, 517 (N.D.Ill.1975), the court pointed out that section 1452b(e) (incorporating by reference former section 1749a of Title 12) "does not establish jurisdiction but merely indicates that the Secretary of HUD is capable of being sued." Other cases dealing with Sec-

---

**3.** Plaintiffs are suing defendant Kemp in his official capacity and have explicitly stated that they are not seeking damages. They make no claim that Kemp is acting outside of his statutory authority nor are they arguing that the statute in question is unconstitutional.

tion 312 have found federal court jurisdiction on the Administrative Procedure Act, 5 U.S.C. §§ 701–06, *Malis v. Hills*, 588 F.2d 545 (6th Cir.1978) (reviewing under an "abuse of discretion" standard the policy of the Secretary requiring that ADC payments be made to HUD in order to approve a loan application), or where the government itself sought to enforce a substantive right. *United States v. Thomas*, 627 F.Supp. 129 (N.D.Ill.1985) (foreclosure action).

Most cases interpreting when the United States government has waived its sovereign immunity with respect to suits arising from federal housing statutes have looked to Section 1 of the National Housing Act of 1934, as amended, 12 U.S.C. § 1702, to construe the "sue and be sued" language.[4] *See Federal Housing Admin. v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940); *Armor Elevator Co. v. Phoenix Urban Corp.*, 493 F.Supp 876, 882 (D.Mass.1980), *aff'd.*, 655 F.2d 19 (1st Cir.1981); *Unimex, Inc. v. United States Dept. of Housing & Urban Dev.*, 594 F.2d 1060, 1061 (5th Cir. 1979); *Yonkers Bd. of Educ.*, 594 F.Supp. at 470–73. However, we note that section 1452b does not form part of this Act and therefore section 1702 represents no *direct* and *explicit* Congressional waiver of sovereign immunity as to actions arising from the Section 312 loan program.

While section 1702 expresses no direct waiver of immunity, we proceed to examine how the courts have construed the statute to determine whether there might, in fact, be grounds to find a waiver in analogous housing statutes. In *Burr, supra,* the seminal case interpreting section 1702, the Supreme Court held that section 1702 constituted a waiver of sovereign immunity where the action related to the garnishment of wages due a federal employee. The oft-quoted rationale for this result was that "when Congress launched a governmental agency into the commercial world and endowed it with the authority to 'sue and be sued,' that agency is not less amenable to judicial procedure than a private enterprise under like circumstances would be." *Burr*, 309 U.S. at 245, 60 S.Ct. at 490. *See Armor Elevator Co. v. Phoenix Urban Corp.*, 655 F.2d 19, 21 (1st Cir.1981); *Yonkers Bd. of Educ.*, 594 F.Supp. at 470.

In *Armor*, 655 F.2d at 21–22, the United States Court of Appeals for the First Circuit reviewed the various ways *Burr* has been construed by the courts. They found as too restrictive the theory that suits can lie against the Secretary "only when the Secretary controls funds authorized to be used for the payment of the plaintiff's alleged losses." *Id.* The court then described the holdings of other courts which looked to Congressional intent in enacting the limited waiver of immunity by deciding "whether the plaintiff's claim is of the type for which a private enterprise doing business in the commercial world would be liable." *Id.* The court reviewed various circumstances where a waiver of immunity had been found and an action could be brought against the Secretary. These circumstances included cases where the Secretary was a party to a contract or where the officer/agency assumed the role of mortgagee, insurer, titleholder, or seller. The rationales given for finding a waiver of immunity were that the Secretary may be sued where another party is in a direct contractual relationship or where the Secretary/agency would be unjustly enriched at the expense of another. *Id.* The court, in *Armor*, went on to find that, since none of these circumstances were present, there was no waiver of sovereign immunity under section 1702.

Looking at plaintiffs' claim, we rule that the circumstances which have allowed courts to find a waiver of sovereign immunity under section 1702 are altogether lacking here. There is no direct contractual relationship between plaintiffs and defendant Kemp. Plaintiffs allege no unjust enrichment on the Secretary's part. And, as the district court pointed out in *Yonkers*

---

**4.** The relevant language of section 1702 reads:
  The Secretary shall, in carrying out the provisions of *this subchapter* (Subchapter I) and *subchapters II, III, V, VI, VII, VIII, IX–B, and X*

*of this chapter,* be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal. (Emphasis added).

*Bd. of Educ.*, 594 F.Supp. at 471, courts have uniformly rejected finding a waiver of sovereign immunity where plaintiffs have brought civil rights actions against HUD since such "actions do not aris[e] out of the commercial relationships which [HUD] enters into in pursuit of its statutory mission." (quoting *S.S. Silberblatt, Inc. v. East Harlem Pilot Block–Building 1 Housing Dev. Fund Co.*, 608 F.2d 28, 36 (2nd Cir.1979)). Therefore, even under section 1702, we find no waiver of sovereign immunity.

To summarize, we find that plaintiffs' claim is, in fact, one against the United States, even though Jack Kemp is the nominal party defendant. Further, we find that Congress has granted no express waiver with respect to claims arising under the Section 312 loan program. Finally, even looking to parallel housing statutes such as section 1702, we find no Congressional consent has been given for plaintiffs' action. Therefore, we hold that plaintiffs are barred by the doctrine of sovereign immunity from bringing an action against defendant Kemp and therefore the action is dismissed for lack of subject matter jurisdiction.

### B. *Defendant Municipality of San Juan*

#### 1. *Section 1452b Claim*

■ Defendant Municipality of San Juan, incorporating defendant Kemp's analysis from his memoranda in support of his motion to dismiss, argues that plaintiffs' federal statutory cause of action should be dismissed on the ground that section 1452b does not afford plaintiffs a private right of action. Using as a guide the four factors outlined in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975),[5] defendant argues that the language of that statute—authorizing the Sec-

retary to make loans and not clearly focusing on the alleged benefitted class of low and moderate-income applicants, *see Cannon v. University of Chicago*, 441 U.S. 677, 689–94, 99 S.Ct. 1946, 1953–56, 60 L.Ed.2d 560 (1979),—demonstrates Congress' intent to not create an implied private right of action. Therefore, pursuant to Fed.R.Civ.P. 12(b)(6), plaintiffs have failed to state a claim.

In *Rousseau*, 589 F.Supp. at 968–70, another district court analyzed the issue of whether section 1452b created either an express or implied right of action. After expeditiously dispatching plaintiff's theory as to an express right of action, the court then thoroughly analyzed Supreme Court precedent and legislative history and concluded that Congress had not intended to create a private right of action under the statute. The court noted the lack of right-creating language in the statute itself and the grant of discretion to the Secretary in making the loan funds available. As the court opined, "[t]his language (of Section 312) constitutes more a description of minimum eligibility requirements than a grant of entitlement or right to federal rehabilitation loan funds." *Id.* at 969. The court also reviewed the legislative history and found it silent as to any type of private enforcement and that the language used "suggest[ed] that Congress intended to provide recipients only with a source of low-interest loan funds to facilitate private rehabilitation efforts and not with a right of action should such efforts go awry." *Id.* at 970. The court concluded that no private right of action was created under section 1452b.

As the court did in *Rousseau*, we find that no private right of action, express or implied, has been created by section 1452b.

---

**5.** The four relevant factors identified in *Cort* are:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," [Citation omitted]—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? [Citation

omitted]. Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? [Citations omitted]. And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? [Citations omitted].

We therefore dismiss plaintiffs' statutory claim.

### 2. *Section 1983 Claim*

■ In their complaint plaintiffs also allege that their fifth and fourteenth amendment due process rights have been violated by "[t]he omissions, delays, actions, inactions, negligence and culpable conduct of the Municipality of San Juan, its officers, employees, and representatives." (Docket Document No. 1, *Complaint,* ¶ 28). Plaintiffs therefore brought action pursuant to 42 U.S.C. § 1983.

To state a claim under section 1983, two elements must be present: "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Our concern here is with the second element necessary to establish a section 1983 claim. We must decide whether plaintiffs were deprived of a right secured by the Constitution of the United States.

Plaintiffs argue that defendants' acts and omissions deprived them of their right to be awarded Section 312 loan funds. In essence, they are claiming that, since they meet all of the requirements of the section 312 loan program, they have a protected property interest in having the loan funds allocated to them. *See Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Beitzell v. Jeffrey,* 643 F.2d 870 (1st Cir.1981). According to plaintiffs, defendants' alleged negligence in processing plaintiffs' loan application resulted in the loan funds not being available when their application was approved. This "denial" of a "property" interest, in turn, triggers due process protection.

In *Beitzell,* the First Circuit explained the Supreme Court's ruling in *Roth* that the word "property" is not limited to ownership of real estate, chattels or money, but includes the interests that a person acquires in specific governmental benefits.

[T]he broadening of the term "property" to include this "new property", [footnote omitted] has required the courts to determine when an interest in a government benefit rises to the level of protected "property". The Supreme Court has made clear that the answer depends in large part upon the extent to which a person has been made secure in the enjoyment of the benefit as a matter of substantive state or federal law. [Citations omitted]. The greater the interest and protection accorded an interest by such substantive law, the more reasonable is the holder in expecting to continue to enjoy it and in making decisions in reliance upon that expectation, and the less reasonable it is for the state to interfere directly with that enjoyment without according a fair opportunity to the holder to contest that interference.

*Beitzell,* 643 F.2d at 874. However, in *Roth,* the Supreme Court made clear that

[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of a constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

*Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

Here it is clear that plaintiffs do not possess a property interest sufficient to warrant constitutional protection. The allegations in plaintiffs' complaint demonstrate that, while they desire and expect to qualify for a Section 312 loan, they have no entitlement to the loan. The fact that plaintiffs may fall within the class of persons who are to be given a priority in the loan application process does not translate into having "been made secure in the enjoyment of the benefit." Other than their

reference to the *priority* language of section 1452b, plaintiffs have cited no federal or state substantive authority upon which to stake their claim of entitlement. We therefore find that plaintiffs' claim states nothing more than a unilateral expectation of a benefit and, consequently, does not rise to the level which triggers constitutional due process protection.

Because plaintiffs have not satisfied this threshold requirement for commencement of a section 1983 suit, we must dismiss plaintiffs' section 1983 claim. *See Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).

### 3. *Pendent State Claims*

Plaintiffs have also alleged two causes of action based on state law. They claim that because we have subject matter jurisdiction over the claims raised by defendant Municipality of San Juan, we possess the power to exercise pendent jurisdiction over plaintiffs' state law claims. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). However, since the exercise of pendent jurisdiction is a matter of the federal court's discretion and not one of plaintiffs' right, *Cohill,* 108 S.Ct. at 618, *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, and since the federal claims have been dismissed at an early stage of this litigation, we decline to exercise pendent jurisdiction over plaintiffs' state law claims and these claims will be dismissed.

### III. *Conclusion*

In sum:

As to defendant Kemp, we DISMISS the action for lack of subject matter jurisdiction based on the doctrine of sovereign immunity.

As to defendant Municipality of San Juan:

1. We DISMISS plaintiffs' federal claims for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

2. We also DISMISS plaintiffs' pendent state law claims.

The action is DISMISSED.

IT IS SO ORDERED.